JUAN PÉREZ MERCADO y ROSAURA MARTÍNEZ, demandantes y recurridos, *v.* ROSA M. MARTÍNEZ RONDÓN, demandada, y LUIS DÍAZ RÍOS, interventor y recurrente.

*Número:* RE-90-548          *Resuelto:* 9 de marzo de 1992

*Manlio Arraiza Donate*, abogado de los demandantes y recurridos; *Lorenzo G. Llerandi Beauchamp*, abogado del interventor y recurrente; *Mark C. Jiménez*, abogado de los interventores y recurridos.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

El 4 de noviembre de 1986 los esposos demandantes Juan Pérez Mercado y Rosaura Martínez Morales, conjuntamente con la demandada Rosa M. Martínez Rondón, otorgaron privadamente, por escrito y suscrito ante un notario, un contrato de opción mediante el cual esta última se comprometió a gestionar de la Administración de Reglamentos y Permisos (A.R.Pe.) el permiso de segregación de un solar de mil (1,000) metros perteneciente a una finca ubicada en el Municipio de Hatillo, propiedad de dicha demandada, y a vender dicho solar a los demandantes por el precio de $22,000. De dicho precio éstos adelantaron a la

demandada la cantidad de $10,000, habiendo acordado las partes que el balance se dividiría en dos (2) plazos iguales que habrían de ser pagados anualmente a partir del otorgamiento de la escritura de compraventa. Tal balance sería garantizado mediante hipoteca sobre el solar objeto de la compraventa. Luego de que A.R.Pe. aprobara la referida segregación, el 28 de junio de 1988 los demandantes presentaron su demanda en contra de la señora Martínez Rondón, en la cual alegaron lo siguiente:

> CUARTO: —Que sin tener conocimiento[, l]os demandantes entraron en estas negociaciones con la parte demandada, [sic] de que existía una hipoteca sobre la propiedad principal de la cual se segregaría el solar que ellos opcionaron con la demandada y a pesar de las gestiones que se han llevado a cabo con la institución financiera acreedora de dicha hipoteca, dicha institución no ha querido liberar el solar que proponía segregar la demandada y vender a los demandantes. Escrito de revisión, Apéndice K, pág. 30.

Como *único* remedio, los demandantes solicitaron del tribunal que "condene a la demandada a satisfacer a los demandantes la suma de $12,562.79[1] más $3,000.00 en concepto de honorarios de abogado y le imponga a su vez la imposición [sic] de las costas, gastos, más los intereses legales a partir de la radicación de la presente demanda". Escrito de revisión, Apéndice K, pág. 31.

En conformidad con lo dispuesto en la Regla 56.4 de

---

[1] En su demanda desglosaron dicha suma así:

"QUINTO:—Que los demandantes le han requerido a la parte demandada la devolución de los $10,000.00 en vista del incumplimiento del Contrato de Opción, y ésta se ha negado a devolver los mismos.

"SEXTO:—Que en adición a los $10,000.00 que han pagado los demandantes a la demandada, éstos le han hecho abonos adicionales que ascienden a $1,562.79.

"SEPTIMO:—Que de conformidad con la cláusula número Octava del Contrato de Opción que se acompaña con la presente demanda, existe una penalidad contra la demandada de ésta no cumplir con las disposiciones del Contrato de Opción al cual se obligó con los demandantes.

"OCTAVO:—Que al día de hoy la parte demandada le adeuda a la parte demandante $12,562.79, deuda que es final, firme y ejecutoria." Escrito de revisión, Apéndice K, pág. 31.

Procedimiento Civil, 32 L.P.R.A. Ap. III, y coetáneamente con la presentación de la demanda, los demandantes solicitaron y obtuvieron una orden provisional de embargo sobre la finca propiedad de la demandada para asegurar la efectividad de la sentencia que en su día pudiera recaer a su favor, en monto suficiente para cubrir las cantidades reclamadas. Según se desprende de los autos originales de este caso, el correspondiente mandamiento para la anotación del mencionado embargo fue presentado a la sección apropiada del Registro de la Propiedad el 14 de noviembre de 1988. Curiosamente, la anotación hecha por el Registrador relativa a dicho mandamiento, se lee del modo siguiente:

Anot. B. En el Tribunal Superior de Puerto Rico se ha radicado una demanda sobre una acción civil en el caso n[ú]mero CS *88–1066* Juan (Mercado) digo Pérez Mercado y su esposa Rosaura Martínez Morales, demandantes versus *Rosa Mar[í]a Mart[í]nez Rond[ó]n* [sic] demandada. Se solicita el pago de la suma de $12,562.79 más $3,000.00 dólares de honorarios de abogado. As[í] resulta del Registr[o y] copia certificada de la demanda presentada a las 2:35 P.M.del d[í]a 14 de noviembre de 1988 al asiento 480 del diario 91. Arecibo a 28 de noviembre de 1988[.] Dros. 32.00[.] Firma ilegible. Reg[.] [sic] [.](²) (Énfasis en el original.) Moción en solicitud se tome conocimiento judicial de certificación registral, Apéndice A, pág. 6.

La demandada fue emplazada mediante la publicación de edictos por alegadamente desconocerse su paradero, y habiéndose celebrado el juicio *en rebeldía* por no haber hecho ésta alegación responsiva alguna, el tribunal dictó sentencia el 5 de julio de 1989 condenándola a pagar la suma reclamada de $12,562.79, más las costas e intereses legales a partir de la fecha de presentación de la demanda.

---

(²) Se despierta nuestra curiosidad por el hecho de que surge del talón de presentación que obra en los autos y de una certificación del Alguacil de la Sala de Arecibo, que todo cuanto fue presentado en dicha fecha fue el mandamiento de embargo, al cual hemos hecho referencia anteriormente, *y no una copia certificada de la demanda.* No surge del expediente explicación alguna para esta incongruencia.

Habiendo advenido firme la sentencia, la parte demandante obtuvo una orden para su ejecución mediante la venta judicial de la finca embargada. Celebrada la correspondiente subasta, *el 15 de marzo de 1990* la finca fue adjudicada a los mejores postores, Sres. Luis G. Román Torres, Gerardo Navas Cestero y Luis Rodríguez Mercado.

Mientras se desarrollaban los hechos antes relatados, mediante la Escritura Núm. 112 otorgada el *20 de mayo de 1988*, ante el notario público Jorge A. Vera Vélez, la demandada Rosa María Martínez Rondón había vendido al interventor recurrente, don Luis Díaz Ríos, la finca antes mencionada por el precio de $36,000, de los cuales la vendedora recibió la suma de $6,000, habiendo retenido el comprador la cantidad de $30,000 para pagar la hipoteca que pesa sobre dicha propiedad. Desde entonces éste y su cónyuge han estado satisfaciendo los plazos mensuales en que se divide el pago de tal obligación.

Como puede verse, el otorgamiento de dicha escritura *se llevó a cabo cinco y medio (5½) meses antes de que se presentara al Registro el mandamiento de embargo al cual hemos hecho referencia anteriormente.* No obstante, la escritura no fue presentada al Registro para su inscripción hasta el 24 de enero de 1989, o sea, con posterioridad a las fechas en que se presentó y anotó el referido embargo, *pero con anterioridad a la fecha en que se llevó a cabo la mencionada subasta y la resultante venta judicial.*[3]

Así las cosas, el 23 de marzo de 1990, el interventor Luis Díaz Ríos presentó al tribunal de instancia un escrito mediante el cual impugnó la referida venta judicial alegando que (1) había adquirido el dominio de la finca previo a la anotación de su embargo, (2) su título estaba pendiente de inscripción en el Registro de la Propiedad a la fecha de la subasta, (3) no se le notificó de ésta y, por con-

---

[3] El título de dominio sobre la finca en cuestión quedó finalmente inscrito a favor del interventor, en virtud de la referida escritura, el día 1ro de agosto de 1989.

siguiente, (4) la ejecución de la propiedad constituyó una violación de su derecho a un debido proceso de ley. Luego de varios trámites procesales, el tribunal celebró una vista en la cual oyó a los adquirentes por subasta y al interventor recurrente, quienes presentaron evidencia de naturaleza documental y testifical.

Mediante la resolución de la cual se recurre, fechada 8 de junio de 1990, el tribunal de instancia declaró sin lugar la petición del recurrente y ratificó la venta judicial del inmueble en cuestión, en ejecución de la sentencia previamente dictada. El tribunal de instancia determinó que el contrato de compraventa en virtud del cual adquirió el recurrente la finca en cuestión resultaba nulo por razón de que siendo éste casado *otorgó la escritura de compraventa como soltero y no realizó acto afirmativo alguno para que su esposa ratificara la mencionada escritura.* Apoyó su resolución en las disposiciones del Art. 149 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2473.[4]

Habiendo decidido revisar, el 6 de noviembre pasado expedimos el auto correspondiente. Todas las partes en este litigio, con excepción de la demandada Rosa M. Martínez Rondón, han presentado sus correspondientes alegatos. A la luz de los hechos que hemos reseñado, procedemos a revocar la resolución de la cual se recurre.

---

[4] Además, el tribunal determinó que el recurrente no era un adquirente de buena fe, ya que supuestamente conocía del contrato de opción entre los demandantes y la demandada, tuvo que adelantar $3,000 a la demandada para que ésta pagara cierta reclamación entablada en su contra por razón de una alegada segregación de quinientos (500) metros practicada en la finca objeto de este litigio y porque desconocía el estado civil de la demandada. Aparte de que los demandantes no inscribieron su contrato de opción ni atacaron en su demanda el título del recurrente —razones por las cuales no está en juego la figura del adquirente de buena fe en este caso— no sabemos, ni el tribunal lo explica, qué tienen que ver los hechos antes relatados con la controversia que motivó la resolución de la cual se recurre.

# I

*Exposición del derecho aplicable*

En el caso de autos es imprescindible, en primer lugar, distinguir los remedios provisionales estatuidos en las Reglas 56.4 y 56.7 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III). La primera de dichas reglas establece, en lo pertinente:

> *56.4. Embargo o prohibición de enajenar*
> Si se hubiere cumplido con los requisitos de la Regla 56.3, el tribunal deberá expedir, a moción *ex parte* de un reclamante, una orden de embargo o de prohibición de enajenar. En el caso de bienes inmuebles, tanto el embargo, así como la prohibición de enajenar se efectuarán anotándolos en el registro de la propiedad y notificándolos al demandado....

La Regla 56.7 de Procedimiento Civil, *supra*, en lo pertinente, lee de la forma siguiente:

> En una acción que afecte el título o el derecho de posesión de propiedad inmueble, el demandante al tiempo de presentar la demanda y el demandado al tiempo de formular su contestación, o en cualquier tiempo después, cuando solicitaren se declare que lo que se reclama es suyo, podrán previa notificación a la parte adversamente afectada, presentar para su anotación al registrador de la propiedad del distrito en que esté situada la propiedad o alguna parte de la misma, un aviso de estar pendiente la acción, que contenga los nombres de las partes, el objeto de la acción o defensa y una descripción de la propiedad afectada por dicha acción. Sólo desde el día de la presentación del aviso para ser anotado se considerará que el comprador o la persona que adquiere un derecho sobre la propiedad litigiosa, tiene conocimiento.
> El tribunal ante el cual se encuentra pendiente la acción tendrá la facultad para ordenar la cancelación del aviso de cuestión litigiosa pendiente, previa la celebración de una vista y la prestación de una fianza en la cuantía que estime razonable, tomando en cuenta la probabilidad de prevalecer la parte ac-

tora, el valor de la propiedad o derecho envuelto y las demás circunstancias del caso.(⁵)

Ambas reglas forman parte del esquema de remedios provisionales de las Reglas de Procedimiento Civil que persigue el fin de asegurar que una sentencia futura sea ejecutada.(⁶) Debemos señalar que cabe la posibilidad de que los citados mecanismos procesales puedan parecernos similares, mas no es así. Ambos procedimientos tienen diferencias sustanciales, no sólo relativas a su naturaleza sino, más importante aún, a las consecuencias jurídicas que traen consigo.

■ Como hemos visto, la citada Regla 56.4 regula el mecanismo que debe utilizarse para llevar a cabo la anotación de embargo en aseguramiento de sentencia, mientras que la Regla 56.7, *supra*, establece el procedimiento que se ha de seguir en los casos de anotación de demanda. Ambos

---

(⁵) Recordemos que en el caso *Rocafort v. Álvarez*, 112 D.P.R. 563 (1982), este Tribunal se enfrentó a la real contradicción entre la Regla 56.7 de Procedimiento Civil, 32 L.P.R.A. Ap. III, y el Art. 112 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2401, resultando ser ésta la siguiente: respecto al aviso de pleito pendiente (*lis pendens*), regulado por la citada Regla 56.7, no se requiere, para su anotación en el Registro, la intervención judicial, siendo la voluntad de las partes el factor necesario para tal anotación. La situación bajo el Art. 112 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*, es distinta ya que el procedimiento utilizado para llevar a cabo una anotación de demanda bajo el primer inciso de este artículo se rige por el Art. 113 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2402. Esta disposición hace necesaria la presentación de una copia certificada de la demanda sólo "cuando la acción tenga un derecho real inscrito como base para su ejercicio" (Art. 113, *supra*), en los demás casos hará falta una providencia judicial al efecto.

Dicha contradicción fue resuelta por el Tribunal al expresarse de la forma siguiente:

"El desarrollo y extraordinario avance de la facultad de interpretación judicial de las leyes por el método evolutivo histórico, también llamado sociológico, y el recurso a la sistematización del Derecho, pueden ir en auxilio de la integridad de nuestro ordenamiento legal declarando ineficaz el primer párrafo de la Regla 56.7 y conservando su párrafo segundo que introduce el provechoso y justo recurso de fianza que permita al demandado que sufre la anotación de sus bienes liberarlos de este gravamen interino, pero aun así gravamen, mediante la prestación de adecuada fianza." *Rocafort v. Álvarez*, supra, pág. 572.

(⁶) Véase *P.R. Prod. Credit Assoc. v. Registrador*, 123 D.P.R. 231 (1989), en cuanto al uso del embargo para asegurar la efectividad de una sentencia.

procedimientos convergen en un punto común: el Art. 112 de la Ley Hipotecaria y del Registro de la Propiedad,([7]) medio a través del cual tienen acceso al Registro de la Propiedad. Dicho artículo establece, en lo pertinente:

*Sec. 2401. Anotación preventiva—Quiénes pueden pedirla*
Podrán pedir anotación preventiva de sus respectivos derechos en el Registro:
· 1ro. El que reclamare en juicio la propiedad de bienes inmuebles o la constitución, declaración, modificación o extinción de cualquier derecho registrable o el que reclamare en alguna acción que afecte el título de propiedad inmueble, o sobre la validez y eficacia, o invalidez o ineficacia, del título o títulos referentes a la adquisición, constitución, declaración, modificación o extinción de los precitados derechos registrables.
2do. El que con arreglo a derecho obtuviere a su favor mandamiento de embargo, sobre bienes inmuebles del deudor.

Cabe apuntar que ambos asientos se caracterizan por su temporalidad; éstos son provisionales en virtud de la naturaleza misma del Art. 112 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*. A este respecto, se ha dicho:

Todas las definiciones que se han ensayado de las anotaciones preventivas giran en torno a la provisionalidad y temporalidad del asiento. Se tratará siempre de publicar derechos imperfectos o procedimientos que pudieran dar lugar a un asiento definitivo. L. Mojica Sandoz, *Apuntes sobre el origen, efectos y extinción de las anotaciones de demanda y de embargo,* 52 Rev. Jur. U.P.R. 451 (1983).

No obstante, debemos analizar los tipos de derechos que tienen acceso al Registro de la Propiedad a través de cada una de estas anotaciones para comprender la verdadera diferencia entre ellos.

El Art. 112(1ro) de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2401(1ro), se refiere a la llamada anotación preventiva de demanda, cuyo pro-

---

([7]) 30 L.P.R.A. sec. 2401.

pósito es el de dar *aviso de pleito pendiente (lis pendens)* sobre la titularidad o algún otro derecho real en relación al inmueble sobre el cual recae dicha anotación, propósito que es idéntico al del primer párrafo de la Regla 56.7, *supra.* La única diferencia existente entre la actual disposición del Art. 112(1ro), *supra*, y el llamado aviso de pleito pendiente (o de *lis pendens*) del primer párrafo de la Regla 56.7, *supra*, es que el primero exige la intervención judicial; o sea, requiere un mandamiento judicial para que la anotación sea practicada debidamente a menos que la acción ejercitada tenga apoyo en un derecho real inscrito, como lo es la acción de ejecución de hipoteca, en cuyo caso bastará con presentar al Registro una copia certificada de la demanda.[8] De manera que se trata de acciones *reales* que versan sobre el *título* de derechos inscritos. A los efectos, explican Roca Sastre y Roca-Sastre Muncunill:

> ... La naturaleza jurídica de la anotación preventiva de demanda es ser un asiento registral que publica el hecho de haberse interpuesto demanda que ha iniciado un proceso judicial, generalmente civil, en el que se ejercita alguna pretensión procesal relativa *al dominio o derechos reales* sobre fincas. (Énfasis en el original suprimido, énfasis suplido y escolios omitidos.) R.M. Roca Sastre y L.M. Roca-Sastre Muncunill, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, Vol. 1, pág. 38.

■ Por lo tanto, las acciones puramente personales no tienen acceso al Registro de la Propiedad a través del Art. 112(1ro) de la Ley Hipotecaria y del Registro de la Propiedad, *supra.*

Indudablemente las demandas judiciales en las que se ejer-

---

[8] Continuamos llamando *lis pendens* a la anotación realizada con el propósito de dar publicidad a terceros de una demanda que tenga que ver directamente con el título inscrito en el Registro de la Propiedad. Recordemos que el caso *Rocafort v. Álvarez*, supra, sólo aclara la forma en que se llevará a cabo tal anotación, la cual deberá hacerse mediante intervención judicial o copia certificada de la demanda. Sin embargo, el concepto *lis pendens* sigue siendo adecuado al referirnos a la mencionada anotación.

cite una acción puramente personal o creditual, que no pueda conducir por virtud de su desenvolvimiento específico, a una modificación jurídica, real inmobiliaria a favor del demandante, no son susceptibles de la anotación preventiva que examinamos. (Énfasis y escolio omitidos.) Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, pág. 38.

Como dijimos anteriormente, el Art. 113 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2402,(9) es claro al hacer obligatoria la intervención judicial:

En el caso del número uno de la sección anterior, no podrá hacerse la anotación preventiva sino cuando se ordene por providencia judicial dictada a instancia de parte legítima y en virtud de documento bastante al prudente arbitrio del juzgador, excepto cuando la acción tenga un derecho real inscrito como base para su ejercicio, en cuyo caso será suficiente para su anotación en el Registro la presentación de copia certificada de la demanda.

El citado es el único mecanismo que procede cuando se pretende anotar preventivamente una demanda en el Registro de la Propiedad. Es imprescindible que el presentante cumpla a cabalidad con este artículo y conceda al Registrador el beneficio de tener los documentos necesarios para llevar a cabo la anotación. La falta de cumplimiento con este procedimiento conlleva la nulidad del asiento practicado. Fue este razonamiento el que nos condujo a declarar ineficaz el primer párrafo de la Regla 56.7, *supra.* Véase *Rocafort v. Álvarez*, 112 D.P.R. 563, 571 esc. 5 (1982).

Por otro lado, el Art. 112(2do) de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2401(2do), estatuye la llamada anotación preventiva de *embargo*. Contrario a la anotación de demanda regulada en el inciso primero, esta anotación no tiene que afectar o tratar sobre

---

(9) 30 L.P.R.A. sec. 2402.

el *título* de un derecho inscrito. El Prof. Herminio Brau, refiriéndose al Art. 42 de la Ley Hipotecaria anterior (predecesor del vigente Art. 112, *supra*), nos explica en detalle:

> Como corolario de las disposiciones de este artículo, la jurisprudencia ha sostenido que la anotación preventiva de embargo no crea ni declara derecho alguno a favor del anotante; no altera la naturaleza de las obligaciones, ni puede convertir en real e hipotecaria la acción que carezca de este carácter; no reserva rango como la mención. H.M. Brau del Toro, *Apuntes para un curso sobre el estado del derecho inmobiliario registral puertorriqueño bajo la Ley Hipotecaria de 1893*, 48 Rev. Jur. U.P.R. 113, 293 (1979).

Por lo tanto, la anotación de embargo en el Registro de la Propiedad se refiere a acciones que no conllevan modificación o extinción de algún derecho inscrito.

■ La expuesta no es la única diferencia que existe entre ambas anotaciones. Como expresáramos anteriormente, los efectos jurídicos de la anotación de demanda (Art. 112(1ro) de la Ley Hipotecaria y del Registro de la Propiedad, *supra*) y la anotación de embargo (Art. 112(2do) de la Ley Hipotecaria y del Registro de la Propiedad, *supra*) son completamente distintos. Es importante, particularmente en el caso de autos, conocer el efecto que las referidas anotaciones tienen sobre títulos anteriores o posteriores a la anotación de que se trate. Comparemos dichos efectos. Mojica Sandoz nos explica lo siguiente:

> Quien reclama el cumplimiento de una obligación y consigue anotación sobre finca inscrita, es acreedor anotante. Quien reclama la declaración de un derecho real y consigue anotación no es un acreedor, está pidiendo se le reconozca un derecho que él ya tiene sobre la finca .... Por eso han merecido siempre ser tratados en dos disposiciones distintas.

> De manera que en *caso de anotación de embargo*, si se presenta y registra un título anterior en fecha a la anotación, surgirá del mismo registro la ineficacia del embargo. La anotación retendrá una existencia formal hasta que se ordene la cancela-

ción, pero no podrá tener eficacia más allá de lo que la propia ley concede. Por tanto en caso de ejecución del embargo, la venta quedará sujeta a los títulos inscritos de fecha anterior a la anotación, si es que son compatibles con el dominio, y no podrá ser inscrita si los títulos inscritos son incompatibles. Recuérdese que el embargante no es tercero.

Nótese que si el *titular anterior en fecha*, pero que *inscribe con posterioridad a la anotación*, lo es de un derecho compatible con el dominio, una hipoteca por ejemplo, atendido el Artículo 117, no se sentirá provocado a asistir al procedimiento que motivó la anotación, sino que confiara [sic] en que *no podrá nunca cancelarse su título* en virtud de una anotación que de acuerdo con la misma ley no puede perjudicarlo.

Por el contrario, *si se trata de una anotación de demanda de propiedad*, bajo el número primero del Artículo 112, los efectos son distintos. Ya no se trata de un acreedor, sino de un titular que llega al Registro como único puede, con una acción judicial. Merece los efectos publicitarios del Registro, y *prevalecería aún sobre titulares anteriores en fecha a la anotación.* Nos parece que no entenderlo así daría paso a situaciones claramente injustas. (Énfasis en el original suprimido, énfasis suplido y escolio omitido.) Mojica Sandoz, *supra*, págs. 459–460.

De igual forma se manifiesta Roca Sastre al sostener que un título anterior a la anotación de embargo prevalece sobre ésta, aunque se inscriba posteriormente en el Registro de la Propiedad, sucediendo todo lo contrario cuando se trata de la anotación preventiva de demanda. A tales efectos, expresa:

...La anotación preventiva de embargo no surte los efectos propios de la hipoteca en trance de ejecución sino a los terceros poseedores, esto es, de los posteriores adquirentes a la anotación preventiva de embargo misma de la finca o derecho real, por cuya razón *aquellos efectos no se dan contra los adquirentes de finca o derecho en virtud de título anterior a la expresada anotación preventiva de embargo, pero inscrito después de ésta.*

Por consiguiente, dicho efecto propio de la hipoteca en ejecución es negado en este caso a la anotación preventiva de embargo. *El que haya adquirido la finca o derecho real antes de anotado preventivamente el embargo*, no tiene la consideración

de tercer poseedor y, por consiguiente, *no puede afectarle dicha anotación preventiva en sí, una vez se inscriba su título adquisitivo anterior.* (Énfasis en el original suprimido y énfasis suplido.) Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, pág. 127.

Al comentar sobre este particular, Lacruz Berdejo y Sancho Rebullida resumen así los efectos de la anotación preventiva de embargo:

> Efectos de la anotación de embargo son:
> a') La relativa ineficacia —es decir, en cuanto perjudiquen a los derechos del anotante— de las enajenaciones realizadas tras ella: no de las anteriores, aunque se inscriban después (arg., art. 44 Lh.).
> b') Tener el acreedor anotante, relativamente al inmueble anotado, la preferencia para el cobro establecida en el art. 1923 Cc., es decir, sólo en cuanto a los créditos posteriores (art. 44 Lh.). (Énfasis suprimido.) J.L. Lacruz Berdejo y F.A. Sancho Rebullida, *Derecho Inmobiliario Registral,* Barcelona, Ed. Bosch, 1977, págs. 273–274.

En conformidad con lo antes expuesto, el párrafo inicial del Art. 149 de la Ley Hipotecaria y del Registro de la Propiedad([10]) dispone lo siguiente:

> Los que registren sus derechos con posterioridad a la anotación se entenderán notificados de la existencia *del pleito* para todos los efectos legales, y que han consentido la cancelación de sus asientos en caso de que sea vendida judicialmente la finca aunque sus títulos tengan fecha anterior a la anotación. (Énfasis suplido.)

Una simple lectura de la transcrita disposición legal a la luz de las otras disposiciones y los principios legales que hemos comentado, debe conducir inescapablemente a la conclusión de que ésta es aplicable exclusivamente a la anotación de demanda dispuesta por el Art. 112(1ro) de la Ley Hipotecaria y del Registro de la Propiedad, *supra.*

---

([10]) 30 L.P.R.A. sec. 2473.

Como han dicho Lacruz Berdejo y Sancho Rebullida en la obra citada:

La anotación es una advertencia a los posibles adquirentes de los bienes anotados. Su efecto consiste "en asegurar un rango al derecho real que como consecuencia del litigio pueda constituirse, asegurando la retroactividad del mismo al momento de la anotación de la demanda frente a los terceros que hayan inscrito en el intermedio algún derecho" (Cossio). En principio, carece de los demás efectos, defensivos y ofensivos de una inscripción. Lacruz Berdejo y Sancho Rebullida, *op. cit.*, pág. 269.

Una vez aclaradas las diferencias entre la anotación preventiva de demanda y la anotación de embargo, es necesario exponer otros principios de Derecho aplicables a las controversias suscitadas en el caso de autos. Debemos expresarnos, en primer lugar, sobre la doctrina que regula la confirmación o ratificación de los contratos que son anulables, situación que se presenta en este caso.

No cabe duda de que a partir de 21 de mayo de 1976 —fecha de vigencia de la Ley Núm. 51 aprobada por la Asamblea Legislativa, la cual enmendó el Art. 1313 del Código Civil, 31 L.P.R.A. sec. 3672—([11]) son actos de disposición tanto la venta de bienes inmuebles pertenecientes a la sociedad legal de gananciales como la *compra* de dichos bienes, por lo que es necesaria la concurrencia de ambos

---

([11]) "No obstante lo dispuesto en la sec. 284 de este título, ninguno de los dos podrá donar, enajenar, ni obligar a título oneroso, los bienes muebles o inmuebles de la sociedad de gananciales, sin el consentimiento escrito del otro cónyuge, excepto las cosas destinadas al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges.

"Todo acto de disposición o administración que sobre dichos bienes haga cualquiera de los cónyuges en contravención a esta sección, y los demás dispuestos en este título, no perjudicará al otro cónyuge ni a sus herederos.

"El cónyuge que se dedicare al comercio, industria, o profesión podrá adquirir o disponer de los bienes muebles dedicados a esos fines, por justa causa, sin el consentimiento del otro cónyuge. No obstante, será responsable por los daños y perjuicios que pudiere ocasionar por dichos actos a la sociedad legal de gananciales. Esta acción se ejercitará exclusivamente en el momento de la disolución de la sociedad legal de gananciales." 31 L.P.R.A. sec. 3672.

cónyuges en la escritura de compraventa mediante la cual se adquieren tales bienes. *Trabal Morales v. Ruiz Rodríguez*, 125 D.P.R. 340 (1990), y casos allí citados. Sin embargo, la adquisición por compra de un bien inmueble, para la sociedad legal de gananciales, por uno de los cónyuges sin el consentimiento por escrito del otro en violación a lo dispuesto por el Art. 1313 del Código Civil, *supra*, no constituye un acto nulo, sino anulable y, por lo tanto, ratificable. *Trabal Morales v. Ruiz Rodríguez*, supra; *Madera v. Metropolitan Const. Corp.*, 95 D.P.R. 637 (1967).

Sabido es que todo contrato nulo es inexistente en Derecho desde el momento mismo en que se otorga y, por lo tanto, nunca genera consecuencias de ley. Al contrario, el acto o contrato anulable produce efectos jurídicos mientras no se declare su nulidad. *Santiago Marrero v. Tribunal Superior*, 89 D.P.R. 835 (1964).

Por otro lado, el Art. 1254 de nuestro Código Civil(¹²) establece:

> Pueden ejercitar la acción de nulidad de los contratos *los obligados principal o subsidiariamente en virtud de ellos.* Las personas capaces no podrán, sin embargo, alegar la incapacidad de aquéllos con quienes contrataron; ni los que causaron la intimidación o violencia, o emplearon el dolo o produjeron el error, podrán fundar su acción en estos vicios del contrato. (Énfasis nuestro.)

De los principios antes expuestos podemos concluir, entonces, lo siguiente: la persona legitimada para impugnar la validez de un acto o contrato será aquella que esté obligada *principal o subsidiariamente* en virtud del mencionado acto o contrato. Definitivamente, en el caso de un contrato otorgado por un cónyuge sin la comparecencia del otro —en la eventualidad de que el consentimiento de

---

(¹²) 31 L.P.R.A. sec. 3513.

éste resulte indispensable—([13]) la única persona legitimada para impugnar dicho contrato será el cónyuge sin cuyo consentimiento se otorgó.

Expuesta la doctrina aplicable, sólo queda resumir los principios enunciados que servirán de apoyo para resolver las controversias ante nos:

1. Las Reglas 56.4 y 56.7 de Procedimiento Civil de 1979, *supra*, se refieren a mecanismos procesales que cumplen cometidos distintos, aunque tienen acceso al Registro a través del mismo Art. 112 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*.

2. La anotación preventiva de demanda tiene acceso al Registro cuando se reclaman derechos que tengan que ver directamente con el título inscrito y de algún modo pueden afectarlo. Esta anotación puede llevarse a cabo exclusivamente por mandamiento judicial o, en el caso de que se fundamente en un derecho real inscrito, por medio de copia certificada de la demanda.

3. La anotación de embargo tiene como fin asegurar el crédito de un acreedor del titular del bien inscrito. Sin embargo, no afecta de modo alguno el título del derecho inscrito.

4. La anotación preventiva de demanda amenaza potencialmente los títulos anteriores a la anotación y puede prevalecer sobre los mismos. Es a esta anotación a la cual se refiere exclusivamente el Art. 149 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*.

5. La anotación preventiva de embargo no afecta los títulos anteriores a la anotación, aunque los mismos hayan ganado acceso al Registro con posterioridad a la referida anotación.

6. La persona legitimada para ejecutar la acción de nulidad de un contrato otorgado por un cónyuge sin la concurrencia del otro es aquel sin cuyo consentimiento se otorgó.

---

([13]) Véase *Banco de Ahorro del Oeste v. Santos*, 112 D.P.R. 70 (1982).

## II

*Aplicación de la doctrina a los hechos en el caso de autos*

En primer lugar, a todas luces el Registrador de la Propiedad en este caso confundió los mecanismos de acceso al Registro de la Propiedad de ambas anotaciones (demanda y embargo). Basta una lectura a la anotación practicada para darnos cuenta. Surge de los autos el hecho de que el Registrador recibió del presentante un mandamiento de anotación de embargo y no una copia certificada de la demanda. Este mandamiento se hizo a tenor con las disposiciones de la Regla 56.4 de Procedimiento Civil de 1979, *supra.* Procedía, entonces, tomar la correspondiente anotación de embargo en los libros del Registro con el fin de asegurar el *crédito personal* de los demandantes reclamado en la demanda. Por tal razón, consideramos que el asiento practicado por el Registrador en este caso carecía de eficacia jurídica alguna respecto al interventor recurrente como adquirente anterior de dicho inmueble.

El tribunal de instancia aplicó, por otra parte, el Art. 149 de la Ley Hipotecaria y del Registro de la Propiedad, *supra,* al resolver este caso, lo cual resulta improcedente. Una mera lectura a la referida disposición de ley nos lleva a la conclusión de que ésta es aplicable exclusivamente a la anotación de demanda realizada a tenor con el primer inciso del Art. 112 de la Ley Hipotecaria y del Registro de la Propiedad, *supra.* No tratándose en este caso de este tipo de anotación, *la referida disposición es inaplicable.* Es por tal razón que el tribunal de instancia erró al ratificar la venta judicial, desconociendo de ese modo el título del aquí interventor recurrente. Éste, según la exposición que de los hechos hiciéramos en la primera parte de esta opinión, otorgó una escritura de compraventa por medio de la cual adquirió el título de la finca en cuestión, previo a la anotación que del embargo se hiciera en el Registro. Según la

doctrina expuesta anteriormente, dicho título prevalece sobre el resultado de la venta judicial, a pesar del hecho de que dicho negocio jurídico ganó acceso al Registro con posterioridad a la anotación del referido embargo.

En su resolución, la juez de instancia hizo constar, entre otros que no merecen discusión por su obvia improcedencia,([14]) como fundamento para no reconocer validez al título del interventor recurrente, el hecho de que el señor Díaz Ríos compareció como soltero al otorgamiento de la escritura de compraventa, siendo éste casado y que dicho negocio jurídico no fue ratificado por su esposa. No estamos de acuerdo. La *única persona* legitimada para impugnar el mencionado contrato era la esposa del interventor. Ésta no ha ejecutado dicha acción.([15]) Siendo la señora Díaz la única persona legitimada para invocar el vicio del referido contrato, los adquirentes del inmueble en la subasta judi-

---

([14]) Véase esc. 4.

([15]) Sobre este particular, la juez de instancia hizo la determinación siguiente:

"... Sobre su incomparecencia al otorgamiento de la escritura la señora Marta Díaz Figueroa atestó que no podía dejar solo el colmado en Hatillo porque ese día el único empleado que tenían había faltado, pero cuando llegara su esposo ella ratificaría la escritura. Su esposo retornó al negocio alrededor de las 7:00 de la noche y no le dijo que fuera a firmar. Nunca firmó. No estaba de acuerdo con la compra. Luego testificó que no había firmado porque el licenciado Vera Vélez, al cual conocía y había otorgado escritura en su presencia, [sic] no la había llamado. Más adelante testificó que no fue al oto[r]gamiento de la escritura porque su esposo le informó que ella no tenía que firmar. El [sic] Tribunal no le mereció credibilidad el [sic] testimonio de Doña Marta V[i]rgen D[í]az Figueroa, por las contradicciones incurridas para justificar su incomparecencia al otorgamiento de la Escritura Número 112, no obstante haber testificado que en otras ocasiones que vendió y/o compró propiedad con su esposo siempre compareció al otorgamiento de la misma ante el Notario Público Jorge A. Vera Vélez." Escrito de revisión, Apéndice A, págs. 8–9.

Dicho testimonio tiende a explicar las razones por las cuales la señora Díaz *no compareció en la escritura de compraventa al momento de su otorgamiento*. No obstante, las razones que tuvo ésta para no hacerlo son inmateriales. Lo importante sobre este particular sería determinar si existe la manifestación voluntaria e inequívoca de dicha cónyuge al efecto de ratificar el referido negocio jurídico mediante los medios que la ley señala. Por considerarlo innecesario a la luz del remedio provisto en este caso, no habremos de pasar juicio sobre dicho testimonio y su efecto a la luz de lo dispuesto en los Arts. 1261 y 1313 de nuestro Código Civil, 31 L.P.R.A. secs. 3520 y 3672, sobre éste.

Surge de los autos, además, que la señora Díaz testificó sobre el hecho de que ella misma expidió sobre su firma algunos cheques destinados a pagar los plazos de la hipoteca que grava el referido inmueble.

cial, efectuada en ejecución de la sentencia dictada en este caso, estaban impedidos de impugnar su validez.

Por los fundamentos antes expuestos, *se revoca la resolución recurrida, de 8 de junio de 1990, y en su consecuencia se anula la venta judicial efectuada en este caso en ejecución de la sentencia dictada originalmente, y se decreta, además, la cancelación del asiento practicado en el Registro de la Propiedad mediante el cual se inscribió el título resultante de dicha venta judicial. Nada de lo aquí dispuesto impedirá a doña Marta Díaz Figueroa otorgar la correspondiente escritura pública a los efectos de ratificar la compra hecha por su esposo, el interventor Luis Díaz Ríos, del inmueble objeto de este recurso, a tenor con lo dispuesto por el Art. 1313 de nuestro Código Civil, supra, y el Art. 1263 de nuestro Código Civil, 31 L.P.R.A. sec. 3522.*

El Juez Asociado Señor Negrón García disintió mediante opinión escrita. Los Jueces Asociados Señores Hernández Denton y Fuster Berlingeri no intervinieron.

— o —

Opinión disidente del Juez Asociado Señor Negrón García.

Disentimos. "[L]o que se opone a lo verdadero es únicamente lo falso y lo que es verdadero para algunos debe serlo para todos." C. Perelman, *La lógica jurídica y la nueva retórica*, (L. Díez-Picazo, trad.), Madrid, Ed. Civitas, 1979, pág. 144.

En buena metodología adjudicativa, toda sentencia se da en un acto unitario e indiviso. Esta controversia amerita un cuidadoso estudio y tratamiento jurídico *integral* debido a sus múltiples componentes. Aquí el aspecto civil sustantivo se presenta amalgamado con el elemento procesal, el derecho inmobiliario registral pero, sobre todo, con lo ético y el principio general de la *buena fe*.

Para impartir justicia hace falta algo más que la mera aplicación técnica y aislada de preceptos legales. Reiteramos "el axioma jurídico filosófico de que la ley es un instrumento de la justicia, y no viceversa". *Jordán-Rojas v. Padró-González*, 103 D.P.R. 813, 815 (1975). Controversias como la de autos activan el instinto jurídico y ponen al juzgador sobreaviso. Sin lugar a dudas, coinciden unas circunstancias que nos mueven a pensar que el interventor recurrente Luis Díaz Ríos —litigante favorecido por la opinión mayoritaria— no ha satisfecho el requisito de buena fe civil que empapa nuestro ordenamiento.

## I

Hace aproximadamente una década llamamos la atención sobre la existencia de una corriente doctrinaria que no le reconocía plena eficacia a la Reforma de 1976. Preocupados por las repercusiones de algunas decisiones judiciales adscritas a esa corriente, expresamos:

> El esfuerzo legislativo reciente de nivelar e igualar jurídicamente a la mujer y al hombre en la dinámica socioeconómica del matrimonio a través del régimen de coadministración y ciertas restricciones a los cónyuges para disponer unilateralmente bienes muebles o inmuebles, no sólo queda paralizado con la decisión de hoy, sino que retrotrae adversamente por medio siglo la evolución del feminismo lograda en esa dirección. *Padró Collado v. Espada*, 111 D.P.R. 56, 66 (1981).

La opinión y sentencia que hoy refrenda la mayoría de este Tribunal reconoce la trayectoria de equiparación de los derechos del hombre y de la mujer. Desde *L. Dershowitz & Co., Inc. v. Registrador*, 105 D.P.R. 267 (1976), y *Aguilú v. Sociedad de Gananciales*, 106 D.P.R. 652 (1977), habíamos respetado la voluntad del legislador que en 1976 emprendió una reforma en tal dirección.

En consonancia con el nuevo estado de derecho —posterior al caso *Madera v. Metropolitan Const. Corp.*, 95 D.P.R.

637 (1967), que la mayoría cita como uno de los precedentes— es obvio que el principio doctrinario general que admite la confirmación *tácita* del negocio jurídico anulable, no puede prevalecer ante una norma específica que exige el *consentimiento por escrito* de ambos cónyuges para la compra o venta de bienes inmuebles. Así lo resolvió la jurisprudencia subsiguiente a la reforma de 1976 y ratificamos recientemente en *Trabal Morales v. Ruiz Rodríguez*, 125 D.P.R. 340 (1990), al decidir que la adquisición de un inmueble era un acto de disposición que requería para su validez y eficacia contractual el *consentimiento escrito de ambos cónyuges.*

Como puede observarse, el carácter espiritualista del Código Civil cede ante una norma *especial* que impone el requisito de la forma escrita para expresar el consentimiento de ambos cónyuges. *Trabal Morales v. Ruiz Rodríguez*, supra, ofreció unos hechos similares a los de autos; aunque se trataba de una dación en pago y no de una compraventa de un inmueble. Allí distinguimos el negocio nulo del anulable y discutimos así los efectos de la *ratificación escrita*:

> En nuestro ordenamiento jurídico rige la norma de que ambos cónyuges son los administradores de la sociedad de gananciales. Art. 91 del Código Civil, 31 L.P.R.A. sec. 284. Por lo tanto, como regla general, es indispensable la concurrencia de ambos cónyuges tanto para enajenar como para adquirir bienes de o para la sociedad de gananciales. *Padró Collado v. Espada*, 111 D.P.R. 56 (1981); *Int'l Charter Mortgage Corp. v. Registrador*, 110 D.P.R. 862, 868 (1981); *Silva Ramos v. Registrador*, 107 D.P.R. 240 (1978); *Aguilú v. Sociedad de Gananciales*, 106 D.P.R. 652 (1977).
>
> Ciertamente la adquisición de un bien inmueble mediante una dación en pago es un acto de disposición que requiere para su validez y eficacia contractual el consentimiento escrito de ambos cónyuges. I. Picó Vidal, *Sentido y alcance de la reforma de la administración de los bienes gananciales*, 18 Rev. Jur. U.I.A. 241 (1984). Sin embargo, ese acto de disposición de bienes gananciales realizado sin el consentimiento inicial de Velma Hernández Vega no era nulo —como afirma Trabal Mo-

rales— sino anulable. Estamos ante un caso típico de negocio ratificable. *Madera v. Metropolitan Const. Corp.*, 95 D.P.R. 637 (1967). El *acta de ratificación* otorgada el 20 de mayo de 1986 por Velma Hernández Vega purificó la dación en pago de ese vicio del que originalmente adolecía. De esta manera ella renunció *expresamente* a invocar la causa de nulidad. El hecho de que la ratificación se efectuara por los demandados recurridos Ruiz-Rosario en fecha posterior a la adquisición del inmueble en nada afecta la relación entre las partes que participaron en la dación en pago. (Énfasis en el original suprimido y énfasis suplido.) *Trabal Morales v. Ruiz Rodríguez*, supra, págs. 348–349.

Reconocemos que el interventor recurrente Díaz Ríos logró probar la alegada adquisición del inmueble *antes* de la anotación del embargo. No obstante, no satisfizo el requisito del consentimiento escrito de su cónyuge Marta Díaz Figueroa. De ninguna manera la firma de ella en unos cheques destinados al pago del préstamo garantizado con hipoteca sobre la finca —como sugiere la mayoría, *in fine*, en el escolio 15— equivale a la ratificación *escrita exigida por la ley*. Y es que la exigencia del consentimiento escrito trasciende el aspecto de la mera formalidad y se interna en el campo de la política pública de equiparación de los sexos y la protección de un interés que tradicionalmente ha estado en desventaja. No estamos dispuestos a rubricar la vieja doctrina de que los contratos surten pleno efecto entre las partes y sus causahabientes como quiera que se hayan otorgado, sin que su constancia por escrito sea requisito para su validez; menos, desentendernos de que este principio cede siempre cuando se trate de darle eficacia *frente a terceros*.

## II

Estamos contestes con la opinión mayoritaria en cuanto al hecho de que en el Registro de la Propiedad se efectuó una anotación preventiva de embargo y no de demanda

como lo resolvió el tribunal de instancia. Y, como está meridianamente claro en nuestro derecho positivo, una anotación preventiva de embargo produce efectos sólo en perjuicio de las adquisiciones posteriores. Las adquisiciones anteriores, aunque no constan inscritas, prevalecen contra la anotación. L. Mojica Sandoz, *Apuntes sobre el origen, efectos y extinción de las anotaciones de demanda y de embargo*, 52 Rev. Jur. U.P.R. 451 (1983); J.M. Mazuelos, *Apuntes sobre las anotaciones de embargo y algunos de sus problemas*, XXXI (Núms. 330–331 y 334–335) Rev. Crít. Der. Inmob. 657, 657–659 y 145 (1955 y 1956); J.M. Medrano Cuesta, M. Ridruejo González y J. Márquez Muñoz, *Sobre la naturaleza y efectos de las anotaciones preventivas de embargo—Algunos de sus problemas*, Ponencias y comunicaciones precedentes al II Congreso Internacional de Derecho Registral, Madrid, Centro de Estudios Hipotecarios, 1974, págs. 418–443.

Ahora bien, como lo estimó el tribunal de instancia, el interventor recurrente Díaz Ríos tampoco cumplió con el requisito de la buena fe civil. *Primero*, a la fecha de adquisición del inmueble Díaz Ríos conocía que los señores Juan Pérez Mercado y Rosaura Martínez Morales tenían un contrato de opción de compra[1] sobre la referida propiedad. *Segundo*, no sólo sabía ese hecho sino que fue advertido sobre el particular y las complicaciones surgidas debido a la negativa del acreedor hipotecario de liberar el inmueble segregado del gravamen. *Tercero*, afirmó en la escritura su soltería, cuando en realidad estaba casado. Y *cuarto*, su esposa Díaz Figueroa atestó que "no estaba de acuerdo con la compra". Apéndice A, pág. 8. Esta situación no es similar

---

[1] Tenemos algunos reparos en catalogar como opción de compra el contrato celebrado. Aquí tanto el objeto estaba definido como el precio se había estipulado (de hecho se había pagado una parte del precio). Sólo faltaba la entrega, porque Rosa M. Martínez Rondón no estaba en condiciones de efectuarla. Intuimos que más bien se trató de un contrato de compraventa sujeto a una condición suspensiva. Cumplida la condición —aprobación de la segregación— cobró plena efectividad el contrato. Véase M.J. Godreau, *La opción de compra en Puerto Rico*, 53 Rev. Jur. U.P.R. 565 (1984).

ni comparable al caso del hombre casado que comparece solo al otorgamiento de las escrituras, como ocurrió en *Trabal Morales v. Ruiz Rodríguez*, supra. Es decir, en el caso de autos Díaz Ríos mintió bajo juramento (perjuró) respecto a su verdadero *status* civil y a espaldas de su cónyuge intentó adquirir un inmueble.

## III

Los hechos expuestos reflejan además que existen ciertas circunstancias que exigen una investigación sobre la conducta profesional del Lcdo. Jorge A. Vera Vélez, notario autorizante de la escritura de compraventa. Aunque en esta etapa no estamos en condiciones de hacer un estudio exegético pormenorizado de los elementos éticos de su conducta, es menester apuntar que ello es absolutamente necesario pues, previamente ante él, los esposos Díaz habían adquirido varias propiedades cuyas escrituras había notarizado, *y en todas había comparecido la esposa de Díaz Ríos como otorgante.*

Esta situación es susceptible de proyectarse como una seria violación de los cánones de ética de la profesión y la Ley Notarial de Puerto Rico. Incluso podríamos estar ante el umbral de un fraude inintencionalmente refrendado por una mayoría de este Foro.

## IV

Finalmente, nos preocupa que todo el trámite judicial ante este Tribunal culmine ordenándole la cancelación del asiento en el Registro de la Propiedad a base de un título imperfecto de compraventa, de su faz anulable, y al cual implícitamente se le ha imputado una presunción de gananciabilidad ficticia, aun cuando los hechos no contradichos y el derecho expuesto niegan esa cualidad.

Ello no es posible, pues la ratificación post trámite judicial atenta contra el principio de legalidad, piedra angular en que descansa nuestro derecho inmobiliario de que al Registro de la Propiedad sólo tienen acceso y pueden entrar los títulos libres de defectos. "Es unánime la doctrina de que el principio de legalidad vigente en nuestro ordenamiento hace necesaria la calificación registral a fin de que solamente logren acceso al Registro títulos válidos y perfectos." *U.S.I. Properties, Inc. v. Registrador*, 124 D.P.R. 448, 465 (1989). Véanse: *P.R. Prod. Credit Assoc. v. Registrador*, 123 D.P.R. 231 (1989); *Kogan v. Registrador*, 125 D.P.R. 636 (1990).

Ese propósito se logra de dos (2) formas. Mediante la función calificadora del Registrador de la Propiedad y el mecanismo de notificación directa al presentante para la oportuna corrección de un defecto subsanable. "La calificación es la facultad por excelencia del Registrador que al ejercitarla realiza el propósito de que el Registro encierre *sólo actos válidos y derechos perfectos. El relajamiento o demérito de esa facultad que adicionalmente es deber ...* conduce a la desintegración de los principios de legitimación y de fe pública registral y con ello a la erosión de la garantía de verdad y seguridad para quien contrata sobre la base de lo que consta en el Registro." (Énfasis suplido.) *L. Dershowitz & Co., Inc. v. Registrador*, supra, pág. 273. La otra forma es a través de la intervención de los tribunales adjudicando de manera definitiva los derechos de los litigantes. Bajo esta avenida, la judicial, el mandamiento al Registro tiene que estar basado en un título cuya validez haya quedado depurada en ese trámite; no como ha sucedido en el caso de autos en que se da eficacia jurídica a una compraventa de su faz anulable.

En resumen, no podemos olvidar que la compraventa entró originalmente al Registro porque el interventor Díaz Ríos espúreamente compareció como soltero, siendo casado. Para validar ese título era previamente necesario que expresamente su esposa Díaz Figueroa la ratificara

por escrito. Hasta el presente no lo ha hecho. ¿Cómo puede el Tribunal ignorar esta realidad, elemento lógico y crucial en su razón de decidir (*ratio decidendi*)?

Por los fundamentos expuestos, confirmaríamos la sentencia de instancia y ordenaríamos una investigación de la conducta del notario Jorge A. Vera Vélez.