ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| ADVANCE TECHNOLOGIES, AWIDPR, INC.<br><br>Parte Apelante<br><br>v.<br><br>GOBIERNO MUNICIPAL DE CATAÑO<br><br>Parte Apelada | KLAN202400214 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.:<br>D AC2018-0108<br><br>Sobre:<br>Cobro de Dinero; Cumplimiento Específico; Incumplimiento de Contrato, Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de noviembre de 2024.

Comparece Advance Technologies, AWIDPR, Inc., (Advance Technologies o parte apelante), mediante recurso de *Apelación*, y nos solicita que revoquemos la *Sentencia* que emitió el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario), el 2 de febrero de 2024.[1] Mediante el referido dictamen, el foro primario desestimó con perjuicio la demanda presentada por Advance Technologies en contra del Gobierno Municipal de Cataño (Municipio o parte apelada), y además, ordenó al Municipio devolver a Advance Technologies las partidas reclamadas sobre el pago de arbitrios de construcción.

---

[1] La *Sentencia* fue notificada y archivada en autos el 5 de febrero de 2024.

Evaluados los escritos presentados por las partes, así como los documentos que obran en el expediente, se confirma el dictamen apelado.

**I.**

El 15 de marzo de 2018, Advance Technologies presentó una demanda sobre incumplimiento de contrato, cobro de dinero, cumplimiento específico y daños, en contra del Municipio.[2] En esta, alegó que, el 1 de marzo de 2016, Advance Technologies y el Municipio suscribieron un contrato para la instalación de cámaras de seguridad en el pueblo de Cataño (contrato número 2016-000115, *Adquisición e Instalación de Cámaras de Seguridad para Diferentes Áreas del Municipio de Cataño*).[3] Dicho contrato tenía fecha de vigencia hasta el 31 de diciembre de 2016. Expuso que, el 16 de mayo de 2016, las partes enmendaron el contrato y firmaron el contrato número 2016-000115-A[4], a los fines de enmendar la fecha de vigencia del contrato original del 1 de marzo de 2016 al 31 de agosto de 2016[5]. Advance Technologies añadió que, debido a que titularon incorrectamente dicha enmienda, el 23 de junio de 2016 las partes suscribieron el contrato 2016-000115-B a los fines de enmendar el título del contrato de conformidad con el contrato original.[6] Advance Technologies señaló que el Municipio– en virtud de una ordenanza municipal–le cobró $19,722.50 en concepto de arbitrios de construcción, lo cuales la parte apelante pagó el 1 de julio de 2016. Alegó que el pago de dichos arbitrios no correspondía por el contrato suscrito ser uno de servicios y no de construcción. Advance Technologies arguyó que, luego de realizar la primera fase

---

[2] Apéndice del recurso, págs. 1-4.
[3] Apéndice del recurso, págs. 129-136.
[4] *Íd.*, págs. 137-138. *Contrato de Servicios para Supervisión del Proyecto Rehabilitación Antigua Casa Alcaldía.*
[5] En la primera página del contrato dice 16 de mayo de 2016 y en la página de las firmas 19 de mayo de 2016. Apéndice del recurso, págs. 137-138.
[6] Íd., pág. 140. Véase, además apéndice del alegato en oposición, págs. 127-128.

del trabajo y de pagar los arbitrios solicitados por el Municipio, el Municipio no le permitió la continuación de la segunda fase. Debido a ello, arguyó que el Municipio le ha ocasionado daños contractuales y extracontractuales, al privársele del pago del trabajo realizado, no permitirle culminar los trabajos y cobrarle indebidamente partidas de dinero.[7] En virtud de lo anterior, Advance Technologies solicitó se declarase con lugar la demanda y, entre otros remedios, solicitó se le ordenara al Municipio devolverle los arbitrios cobrados y retenidos indebidamente.

El 1 de junio de 2016, el Municipio presentó *Contestación a Demanda.*[8] En esta, aceptó que hubo una contratación con Advance Technologies, pero negó el resto de las alegaciones. De igual forma, expuso sus defensas afirmativas.[9]

Luego de varios trámites procesales, el 9 de noviembre de 2018, Advance Technologies presentó una *Moción de Sentencia Sumaria.*[10] Por su parte, el 11 de enero de 2019, el Municipio instó su *Oposición a Solicitud de Sentencia Sumaria.*[11] En tanto, el 18 de enero 2019, las partes presentaron el *Informe de Conferencia con Antelación al Juicio.*[12]

Así las cosas, el 25 de enero de 2019, el foro de instancia emitió una *Resolución* en la cual determinó que había 18 hechos incontrovertidos y 14 hechos en controversia. Por consiguiente, declaró no ha lugar la sentencia sumaria presentada por Advance Technologies y ordenó la continuación de los procedimientos.[13]

Celebrado el juicio en su fondo y, tras evaluar y aquilatar los testimonios vertidos en el juicio y la prueba documental

---

[7] *Íd.*
[8] Véase, sistema de consulta de casos del Poder Judicial.
[9] *Íd.*, págs. 5-6.
[10] *Íd.*, págs. 7-26.
[11] *Íd.*, págs. 41-45.
[12] *Íd.*, págs. 46-65.
[13] Apéndice de la parte apelada, págs. 318-325.

presentada,[14] el 2 de febrero de 2024, el TPI emitió la sentencia apelada. En esta, formuló las siguientes determinaciones de hechos:[15]

1. La demandante, Advance Tec[h]nologies, es una corporación con fines de lucro organizada bajo las leyes de Puerto Rico con oficina localizada en la Urb. Levittown Lakes ED-12 Calle Juan Rivera Viera, Toa Baja, PR 00949.

2. El agente residente de Advance Tec[h]nologies es el Sr. Héctor Rivera Santiago y su dirección física es Urb. Levittown Lakes ED-12 Calle Juan Rivera Viera, Toa Baja, P.R., 00949.

3. En el año 2015, la parte demandada, Gobierno Municipal de Cataño, a través de su Junta de Subastas solicitó cotizaciones a través del proceso de invitación y propuestas para el proyecto de adquisición e instalación de cámaras de seguridad para diferentes áreas del Municipio de Cataño.

4. La demandante hizo una propuesta a la Junta de Subastas que fue aceptada por el Municipio.

5. El 1 de marzo de 2016 la demandante y el demandado firmaron el contrato número 2016-000115 titulado "ADQUISICIÓN E INSTALACIÓN DE CÁMARAS DE SEGURIDAD PARA DIFERENTES ÁREAS DEL MUNICIPIO DE CATAÑO". Asimismo, fue categorizado como construcción y reparación de estructuras, categoría 06.

6. El 16 de mayo de 2016 las partes firmaron el contrato número 2016-000115-A, para enmendar el contrato firmado originalmente para que su vigencia fuera del 1 de marzo de 2016 al 31 de agosto de 2016. Sin embargo, a pesar de que habían modificado su categoría a una de servicios técnicos, categoría 15, lo identificaron como si fuera un contrato para la construcción de obra al intitularlo "CONTRATO DE SERVICIOS PARA LA SUPERVISIÓN DEL PROYECTO DE REHABILITACIÓN ANTIGUA CASA ALCALDÍA".

7. El 23 de junio de 2016 las partes firmaron el contrato número 2016-000115-B para corregir el nombre del contrato número 2016-000115-A de forma que coincidiera con el nombre del contrato original, entiéndase, "ADQUISICIÓN E INSTALACIÓN DE CÁMARAS DE SEGURIDAD PARA DIFERENTES ÁREAS DEL MUNICIPIO DE CATAÑO" bajo la categoría de

---

[14] El caso quedó sometido ante el foro primario desde el mes de febrero de 2019. Es menester destacar, que las partes estipularon 40 *Exhibits* y desfiló prueba testifical a través de 5 testigos presentados por Advance y 3 testigos del Municipio. Además, las partes estipularon los hechos incontrovertidos determinados por el TPI en la Resolución sobre sentencia sumaria del 25 de enero de 2019.

[15] Solo se incluyen aquellas determinaciones de hecho que son pertinentes a los errores presentados por la parte apelante.

servicios técnicos. Todas las demás cláusulas quedaron inalteradas.

8. El contrato y sus enmiendas fueron registrados en el Registro de Contratos para el correspondiente año fiscal y se envió copia a la Oficina del Contralor de Puerto Rico.

9. El 27 de junio de 2016, el Departamento de Finanzas del demandado aprobó la Orden de compra o servicio referente al contrato para la adquisición e instalación de cámaras de seguridad para diferentes áreas del municipio por un importe total de $518,600.00.

10. La Orden de compra fue aprobada, además, por el Departamento de compras, pre-intervención y la Oficina del Alcalde.

11. El proyecto consistió en la instalación de cámaras que iban cogidas a los postes con abrazaderas de metal, ya que los postes donde iban a instalarse eran propiedad de la Autoridad de Energía Eléctrica y no permitían perforaciones para instalarlos permanentemente. Asimismo, consistió en la instalación de equipo para poder operar y monitorear las cámaras.

12. El proyecto se realizaría en cuatro (4) fases, por lo que luego de terminada cada fase un personal del municipio inspeccionaba y certificaba el trabajo realizado. De esta manera, la certificación era enviada al Departamento de Finanzas para que se emitiera el pago.

[…]

14. El 29 de septiembre de 2016 las partes firmaron el contrato número 2016-000115-C para añadir la adquisición e instalación de cámaras de seguridad para el proyecto "Ventan[ill]a Única".

15. La Ordenanza Municipal Número 12, Serie 2004-2005, requería que todo contratista de obra de construcción, antes de iniciar sus trabajos tenía que obtener el permiso de la Administración de Reglamentos y Permisos del Municipio y para ello tenía que pagar los arbitrios correspondientes.

16. A base de dicha ordenanza y de lo dispuesto en la Ley de Municipios Autónomos, según enmendada se le cobraron a la demandante $19,722.50 por arbitrios de construcción, los cuales pagó el 1 de julio de 2016. Asimismo, le fue cobrada la cantidad de $691.00 de arbitrios por el proyecto de Ventan[ill]a Única, los cuales pagó el 15 de diciembre de 2016.

17. La demandante en atención a que su obra no era de construcción sino de servicios de instalación de cámaras, previo al pago de las sumas de dinero solicitadas por el demandado para arbitrios, reclamó el cobro de los mismos mediante cartas que fueron recibidas por este último.

18. De los trabajos contratados, la demandante pudo realizar la primera fase consistente en la instalación de 27 cámaras la cual fue certificada por el Director de Planta Física en ese momento Sr. Rosendo Vela y con dicha aprobación el demandado le pagó al demandante.

19. La factura de la primera fase fue por la cantidad de $144,100.00. No obstante, el demandado le pagó a la demandante la cantidad de $129,690.00, ya que le retuvieron $14,410.00, correspondientes a un 10% de retención que sería devuelto al finalizar todas las fases del proyecto.

20. La primera fase fue aceptada y pagada por el Municipio a base de una certificación hecha por un empleado municipal.

[...]

23. La demandante terminó la segunda fase y presentó factura por trabajos terminados por la segunda fase por la suma de $220,350.00.

24. Existe un recibo como que la segunda fase fue aceptada por un empleado municipal. La factura fue certificada y aceptada por el Sr. Carlos Ortiz, Director de Planta Física en ese momento.

25. El Departamento de Finanzas no pagó a la demandante la cantidad de $220,350.00, correspondientes a dicha fase.

26. La demandante no concluyó las fases restantes según pactado en el contrato.

[...]

34. La Sra. Yaritza Resto Mora, empleada del Municipio de Cataño era la pareja consensual del Sr. Héctor Rivera Santiago para la fecha de los hechos pertinentes a este caso.

35. La demandante no solicitó dispensa a la Oficina de Ética Gubernamental de Puerto Rico para contratar con el Municipio de Cataño.

36. En las facturas sometidas por la demandante, existe una cláusula que lee de la siguiente manera: "Bajo pena de nulidad absoluta certifico que ningún servidor público del Municipio de Cataño es parte o tiene algún interés en las ganancias o beneficios producto del contrato objeto de esta factura y de ser parte o tener interés en las ganancias o beneficios producto del contrato ha mediado una dispensa previa. La única consideración para suministrar los bienes o servicios objeto del contrato ha sido el pago acordado con el representante autorizado de la agencia. El importe de esta factura es justo y correcto. Los trabajos de construcción han sido realizados, los productos han sido entregados, los servicios prestados y no han sido pagados."

(Énfasis nuestro).

En virtud de lo anterior, el TPI concluyó que, desde la etapa de solicitud de propuesta emitida por el Municipio, la cual culminó con la otorgación del contrato en controversia, Advance Technologies conocía su obligación de cumplir con la Ley de Municipios Autónomos y la Ley de Ética Gubernamental de Puerto Rico, entre otros estatutos aplicables. En específico, el foro primario destacó que, de la propia solicitud de propuesta (Exhibit 3) surge la certificación de Advance Technologies como licitador en la que asevera que ningún empleado o funcionario del Municipio tiene interés pecuniario en la oferta. El TPI resaltó que surgen disposiciones similares del contrato suscrito entre las partes. En ese sentido, el foro apelado enfatizó que, como parte de los términos del contrato, se requería que cada factura emitida incluyera un párrafo en el que Advance Technologies certificara, bajo pena de nulidad, que ningún funcionario o empleado tenía interés en las ganancias o beneficios producto del contrato incluidas en la factura. Sobre el particular, el foro primario sostuvo que, la prueba presentada por Advance Technologies sobre los alegados daños sufridos reflejaban que, al no haber recibido el pago del contrato, ello le ocasionó daños consistentes en atrasos de varias cuentas a nombre de su pareja consensual, la Sra. Yaritza Resto Mora– daños que Advance Technologies reclamó como suyos.

En vista de lo anterior, el foro de instancia concluyó que la Sra. Resto Mora, no solo era una empleada del Municipio, sino que su función estaba directamente relacionada con el objeto del contrato suscrito entre el Municipio y Advance Technologies y que esta recibía beneficios del contrato en controversia. En específico, el foro *a quo* destacó que la Sra. Resto Mora era la Directora Interina del Código de Orden Público del Municipio, por lo que su función estaba relacionada directamente con la instalación de cámaras de seguridad objeto del contrato. Sobre ese particular, el TPI expresó

que era hecho estipulado que la Sra. Resto Mora era la pareja consensual del Sr. Héctor L. Rivera Santiago–agente residente, incorporador, presidente y representante de Advance Technologies y que estos compartían su residencia. Ante tales circunstancias, el foro apelado concluyó que, en virtud de la Ley de Municipios Autónomos y la Ley Orgánica de la Oficina de Ética Gubernamental, el contrato suscrito entre Advance Technologies y el Municipio estaba prohibido, a menos que la Oficina de Ética Gubernamental hubiera otorgado una dispensa. Ante la ausencia de dicha dispensa, el TPI concluyó que el contrato era nulo. En consecuencia, declaró No Ha Lugar la demanda presentada por Advance Technologies.

No obstante, el foro de instancia determinó que el Municipio debía rembolsar a Advance Technologies la cantidad de $21,415.50 correspondiente a los gastos en que esta incurrió para el pago de arbitrios de construcción. Lo anterior, pues el TPI determinó que, conforme surge de la Ordenanza Número 12 Serie 2004-2005– la cual requiere el pago de arbitrios de construcción– no procedía el cobro de estos a Advance Technologies por los servicios brindados, pues estos no comprendían ninguna de las actividades de construcción descritas en la referida ordenanza. Por ello, el TPI concluyó que los arbitrios se cobraron indebidamente y ordenó la devolución de las partidas reclamadas.

En desacuerdo con la decisión del TPI, Advance Technologies comparece ante nos mediante el recurso que nos ocupa y alega que el TPI cometió los siguientes errores:

> Primer señalamiento de error: Erró el Honorable Tribunal de Primera Instancia al concluir que la demandante requería la dispensa para contratar con el Municipio y[,] por ende, decretó nulo el contrato entre las partes.

> Segundo señalamiento de error: Erró el Honorable Tribunal de Primera Instancia al concluir como hecho probado la alegación del abogado del demandado de que la Sra. Resto era directora de la Oficina de Código de

Orden Público de lo cual no se presentó prueba en el juicio.

Tercer señalamiento de error: Erró el Honorable Tribunal de Primera Instancia al concluir que la alegada relación entre el Sr. Rivera Santiago y una empleada municipal hace nulo el contrato entre las partes cuando el mismo fue firmado por el Municipio y una corporación quien tiene personalidad jurídica distinta a su propietario.

El 3 de abril de 2024, el Municipio presentó el *Alegato de la Apelada*. Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

**II.**

**A.**

El Art. 1042 del Código Civil de Puerto Rico de 1930,[16] según enmendado, enumera las fuentes de las obligaciones reconocidas por nuestro ordenamiento jurídico.[17] Así, el referido artículo dispone que "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia".[18] En particular, sobre las obligaciones de naturaleza contractual, el Art. 1206 establece que un "contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio".[19]

El principio de la autonomía contractual que rige en nuestra jurisdicción "[p]ermite que las partes contratantes establezcan los pactos, las cláusulas y las condiciones que entiendan convenientes".[20] Esa autonomía estará limitada únicamente, y el

---

[16] El Código Civil de Puerto Rico de 1930, fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020, según enmendada, 31 LPRA sec. 5311 *et seq.* Para fines de la presente controversia, se hace referencia únicamente al Código Civil derogado por ser la ley vigente al momento que sucedieron los hechos que dieron lugar a la controversia.
[17] Art. 1042 del Código Civil de Puerto Rico, 31 LPRA sec. 2992.
[18] *Íd.*
[19] Art. 1206 del Código Civil de Puerto Rico, 31 LPRA sec. 3371.
[20] *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 455-456 (2014); Art. 1207 del Código Civil, 31 LPRA sec. 3372.

contrato será nulo e inexistente, si este último resulta **contrario a las leyes**, a la moral o **al orden público**.[21] Énfasis nuestro.

Ahora bien, para que un contrato sea fuente de obligaciones es necesario que concurran los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato, y (3) causa de la obligación que se establezca.[22] De manera que, al concurrir los referidos elementos nace una obligación; desde el punto de vista del acreedor, existe un derecho a exigir su cumplimiento y, desde la perspectiva del deudor, existe el deber de cumplirla.

**B.**

Por otro lado, es un axioma básico de nuestro ordenamiento jurídico que un contrato es nulo cuando le "falta ... algún elemento esencial o porque contraviene con un precepto legal...".[23] La nulidad absoluta o radical puede producirse en tres escenarios, a saber: cuando se ha infringido alguna **norma imperativa**; cuando al contrato le falta alguno de los elementos constitutivos; o cuando el **contrato no se ajusta a las formalidades exigidas** cuando éstas tienen un carácter esencial.[24] Énfasis nuestro. Cuando un contrato es nulo, el mismo "es inexistente en Derecho desde el momento mismo en que se otorga y, por lo tanto, nunca genera consecuencias de ley."[25]

Claro está, hay que distinguir entre el contrato nulo, de aquel meramente anulable. El contrato anulable es eficaz inicialmente,

---

[21] 31 LPRA ant. sec. 3372; *Rodríguez Ramos et al. v. ELA et al.*, supra, pág. 456.
[22] Arts. 1213 y 1230 del Código Civil, 31 LPRA secs. 3391 y 3451; *Díaz Ayala et al. v. E.L.A.*, 153 DPR 675, 690-691 (2001).
[23] Puig Brutau, *Fundamentos de Derecho Civil*, Tomo II, Vol. I, 3era ed., Barcelona, Bosch, 1988, pág. 286.
[24] José Puig Brutau, *op. cit.*, pág. 287.
[25] *Pérez Mercado v. Martínez Rondón*, 130 DPR 134, 150 (1992).

pero puede ser impugnado y dejado sin efecto.[26] Además, contrario al contrato anulable, el contrato nulo no puede ser convalidado.[27]

Resaltamos, que con ese propósito en mente nuestro Código Civil en su Artículo 1255, dispone que la declaración de nulidad tendrá como consecuencia deshacer el intercambio de prestaciones practicadas y evitar que las obligaciones contraídas y no cumplidas puedan ser exigidas.[28] Por consiguiente, decretada la nulidad del contrato, las partes quedan condenadas a la restauración del estado primitivo anterior de las cosas, mediante la restitución de las prestaciones, salvo cuando la nulidad se deba a causa torpe o ilícita, en cuyo caso debe apreciarse el grado de culpa envuelto de la parte que reclama la devolución.[29]

Finalmente, nuestro más Alto Foro, ha reiterado en varias ocasiones que:

> [l]a nulidad de los contratos puede ser relativa o absoluta, dependiendo de las circunstancias que provocan la ineficacia. Por lo cual, **los contratos que adolecen de nulidad absoluta son nulos *ab initio* e inexistentes, por lo que no producen efecto jurídico alguno independientemente del tipo de contrato que se trate** y de la importancia que tenga para las partes contratantes.[30] Énfasis nuestro.

### C.

En primer lugar, la validez de los contratos con los municipios se determina según **las disposiciones aplicables de la Ley de Municipios Autónomos, y no según la teoría de las obligaciones y contratos del Código Civil**, que tan solo aplica supletoriamente.[31] Énfasis nuestro. Así, el Tribunal Supremo de Puerto Rico ha reiterado "[q]ue las partes que contratan con cualquier entidad gubernamental sin cumplir con los requisitos de contratación

---

[26] José Puig Brutau, *op cit.*, pág. 287.
[27] José Ramón Vélez Torres, *Curso de Derecho Civil: Derecho de Contratos*, Tomo IV, Vol. II, 1ra ed., San Juan, 1990, pág. 125.
[28] Artículo 1255 del Código Civil de Puerto Rico, 31 LPRA sec. 3514.
[29] *Íd*; *Bosques v. Echevarría*, 162 D.P.R. 830, 836-837 (2004).
[30] *Blanco Matos v. Colón Mulero*, 200 DPR 398, 408 (2018). (Citas omitidas).
[31] *Landfill Technologies v. Mun. de Lares*, 187 DPR 794, 801 (2013). (Citas omitidas).

gubernamental se arriesgan a asumir la responsabilidad por sus pérdidas".[32] Como corolario de lo anterior, nuestro más Alto Foro, ha resuelto que:

> [e]l propósito de los estatutos que regulan la realización de obras y la adquisición de bienes y servicios para el Estado, sus agencias y dependencias, y los municipios, es la protección de los intereses y recursos fiscales del pueblo. De esta forma se evita el favoritismo, el dispendio, la prevaricación y los riesgos del incumplimiento.[33]

Ahora bien, la *Ley de Municipios Autónomos*,[34] Ley Núm. 81-1991,[35] se creó con el propósito de garantizar a los municipios un mayor grado de autonomía fiscal y gobierno propio para atender eficazmente las necesidades y el bienestar de sus habitantes.[36] Por un lado, en lo pertinente a los contratos que otorga un municipio, el Artículo 8.016[37] dispone que:

> El municipio podrá contratar los servicios profesionales, técnicos y consultivos que sean necesarios para llevar a cabo las actividades, programas y operaciones municipales o para cumplir con cualquier fin público autorizado por esta Ley o por cualquier otro estatuto aplicable. **No obstante, todo contrato que se ejecute o suscriba en contravención a lo dispuesto en este Artículo será nulo y sin efecto**, y los fondos públicos invertidos en su administración o ejecución serán recobrados a nombre del municipio mediante la acción incoada a tal propósito.
>
> **El Municipio no podrá otorgar contrato alguno en el que cualquiera de sus legisladores, funcionarios o empleados tenga, directa o indirectamente, un interés pecuniario. Como excepción a lo dispuesto en este inciso, la Oficina de Ética Gubernamental podrá autorizar la contratación, de conformidad con lo dispuesto en la Ley 1-2012, según enmendada, conocida como "Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico", y los reglamentos adoptados en virtud de la misma.**
>
> […]

---

[32] *Rodriguez Ramos et al. v. ELA et al.*, supra, pág. 461. Citando a *Quest Diagnostics v. Mun. San Juan*, 175 DPR 994, 1002 (2009); *Colón Colón v. Mún. De Arecibo*, 170 DPR 718, 728-729 (2007).

[33] *Johnson & Johnson v. Mun. de San Juan*, 172 DPR 840, 854-855 (2007). (Citas omitidas).

[34] Mediante la aprobación de la Ley 107 de 14 de agosto de 2020 se creó el Código Municipal que deroga la Ley de Municipios Autónomos. No obstante, la legislación vigente y aplicable, a la fecha de los hechos pertinentes a nuestra controversia, es la Ley 81-1991.

[35] 21 LPRA sec. 4001 *et seq.*

[36] *Pfizer Pharm. v. Mun. de Vega Baja*, 182 DPR 267 (2011).

[37] 21 LPRA sec. 4366.

(Énfasis nuestro).

Por otro lado, en años más recientes, fue aprobada la Ley Núm. 1–2012, según enmendada.[38] Esta Ley, fue aprobada con el propósito principal de renovar y reafirmar la función preventiva y fiscalizadora de la Oficina de Ética Gubernamental.[39] En lo pertinente al recurso que nos ocupa, el Artículo 4.2(g) y (h)[40] disponen lo siguiente:

> [...]
>
> (g) **Un servidor público no puede intervenir, directa o indirectamente, en cualquier asunto en el que él, tenga un conflicto de intereses que resulte en la obtención de un beneficio para él**. **Tampoco un servidor público puede intervenir directa o indirectamente, en cualquier asunto en el que un miembro de su unidad familiar, su pariente, su socio o una persona que comparta su residencia**, tenga un conflicto de intereses que resulte en la obtención de un beneficio para cualquiera de ellos. [...]
>
> (h) La autoridad nominadora o un servidor público con facultad de decidir o de influenciar a la autoridad nominadora, **no puede intervenir, directa o indirectamente, en el nombramiento, ascenso, remuneración o contratación de su pariente.** Se entenderá que un servidor público tiene facultad para decidir o influenciar cuando una ley, reglamento, descripción de deberes o designación así lo disponga. [...]
>
> (Énfasis nuestro).

Por otro lado, atinente a la controversia que nos ocupa, al revisar las disposiciones de la Ley 1-2012, *supra,* también encontramos que el Artículo 4.3(d),[41] establece:

> La autoridad nominadora **no puede llevar a cabo un contrato en el que un servidor público de la agencia** o un miembro de la unidad familiar, un pariente, un socio o **una persona que comparta la residencia de este último tenga o haya tenido, directa o indirectamente, un interés pecuniario** durante los últimos dos (2) años anteriores a su nombramiento. Énfasis nuestro. [...]

---

[38] Ley Núm. 1-2012, según enmendada, conocida como la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*, 3 LPRA sec.1854 *et seq.*
[39] Exposición de Motivos, Ley Núm. 1-2012.
[40] 3 LPRA sec. 1857a.
[41] 3 L.P.R.A. § 1857b.

**D.**

De otra parte, el Art. 1054 del Código Civil derogado,[42] provee un remedio para daños derivados del incumplimiento de contrato, al disponer: "[q]uedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieran al tenor de aquellas". En síntesis, las acciones *ex contractu* se refieren a actos u omisiones voluntarios que conllevan la inobservancia de obligaciones previamente pactadas.[43]

Al igual que en una acción extracontractual, en la *ex contractu* la parte promovente debe probar la existencia de los daños alegados y del incumplimiento culposo o doloso de la obligación contractual.[44] De igual manera, debe existir una relación de causa a efecto entre el incumplimiento y los daños.[45]

**III.**

Expuesta la norma jurídica, procedemos a aplicarla a los hechos ante nuestra consideración. En cuanto al primer error señalado, el apelante aduce que el TPI erró al concluir que Advance Technologies tenía que obtener una dispensa para poder contratar con el Municipio y, a su vez, declarar nulo el contrato. No le asiste la razón. Del expediente surge, que desde que Advance Technologies presentó su propuesta, certificó que, al someter su oferta juraba que ningún empleado o funcionario del Municipio tenía interés pecuniario en la oferta.[46] De la misma forma, el Contrato Núm. 2016-000115,[47] en el décimo párrafo expresa que:

> El contratista hace constar que **ningún** asambleísta, funcionario o **empleado del Municipio ni ningún miembro de su unidad familiar tiene o tendrá directa o indirectamente interés pecuniario en este**

---

[42] 31 LPRA sec. 3018.
[43] *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 909 (2012).
[44] *Muñiz-Olivari v. Stiefel Labs.*, 174 DPR 813, 819 (2008).
[45] *Íd.*
[46] Apéndice del recurso, pág. 87.
[47] *Íd.*, pág. 132.

**contrato**, y que ningún miembro de la Rama Ejecutiva tiene interés en las ganancias o beneficios producto de este contrato. Énfasis nuestro.

De entrada, la propia Ley Núm. 81-1991, *supra*, prohíbe que un Municipio otorgue un contrato en el que un funcionario, empleado o legislador, tenga o pueda tener un interés pecuniario. Claro está, la única excepción permitida implica que, si un funcionario público resulta beneficiado o tiene algún interés en un contrato con el Municipio, la Oficina de Ética Gubernamental tiene que autorizar su otorgamiento. Pues de lo contrario, la ley es clara a los efectos de que cualquier contrato que se otorgue con el Municipio, en contravención con el Art. 8.016 de la Ley 81-1991, *supra*, es nulo.

En este caso, la prueba que se desfiló y fue admitida en el juicio, demuestra que la Sra. Resto Mora y el Sr. Rivera Santiago, mantenían una relación consensual al momento de otorgar el contrato. De igual manera, ostentaban un interés pecuniario en el contrato con el Municipio. Sin embargo, no se solicitó autorización alguna a la Oficina de Ética Gubernamental. Por lo tanto, al existir una prohibición expresa para ese tipo de contratos y no habiendo una dispensa, el contrato es nulo.

En lo pertinente al segundo error, Advance arguye que el TPI erró al determinar como un hecho probado que la Sra. Resto Mora era la Directora de la Oficina del Código de Orden Público cuando tal hecho, aparentemente fue una alegación formulada por el abogado del Municipio y no se presentó prueba alguna en el juicio. No le asiste la razón.

Vale destacar que, como norma general, los tribunales apelativos no intervendremos con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el TPI, salvo en situaciones en que éste

haya incurrido en pasión, prejuicio, parcialidad o error manifiesto.[48] Un examen ponderado del expediente revela que el aquí apelante no nos colocó en condiciones para pasar juicio sobre los testimonios o planteamientos realizados en sala, pues se no sometió ningún medio de reproducción de la prueba oral.[49]

Sin embargo, se desprende del expediente que las partes estipularon como *Exhibit* 33 la Contestación a Interrogatorio del Sr. Rivera Santiago y la misma fue admitida en el juicio como evidencia. Obsérvese, que el Sr. Rivera Santiago declaró bajo juramento lo siguiente; "**Mi pareja consensual es empleada del municipio**...Del 2012 al 2015 fue supervisora de facturación y cobro del CDT de Cataño. **Y en febrero de 2015 a octubre de 2016 fungió como directora interina del Código de Orden Público**".[50] Énfasis nuestro.

Resulta claro, que el Sr. Rivera Santiago admitió que la Sra. Resto Mora fue la Directora de la Oficina del Código de Orden Público y que a su vez, era su pareja consensual. Por lo cual, es forzoso concluir que, ante la prueba presentada y admitida en el juicio, a la cual el foro apelado otorgó credibilidad, el TPI concluyó razonablemente que la Sra. Resto Mora era la Directora del Código de Orden Público de Cataño. Por consiguiente, el error señalado no fue cometido.

Finalmente, procedemos a discutir el tercer error. En este, Advance Technologies aduce que el TPI erró al concluir que una alegada relación entre el Sr. Rivera Santiago y una empleada municipal, vuelven nulo el contrato. Añade, que por el Municipio y

---

[48] *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 793 (2020); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 753 (2013).

[49] La Regla 19 del Reglamento del Tribunal de Apelaciones establece que cuando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, someterá una transcripción, una exposición estipulada o una exposición narrativa de la prueba. Regla 19 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.19.

[50] Apéndice del recurso, pág. 256.

la corporación tener personalidad jurídica distinta a la de sus propietarios, el contrato no es nulo. No le asiste la razón.

Como se mencionó anteriormente, quedó demostrado que al momento en que se realizó el contrato, existía una relación consensual entre la Sra. Resto Mora —quien era empleada del Municipio de Cataño— y el presidente de Advance Technologies, el Sr. Rivera Santiago. Sin embargo, según la Ley Núm. 81-1991, *supra*, un Municipio no puede otorgar un contrato en el que un funcionario, empleado o legislador, tenga un interés pecuniario.

De igual manera, el Art. 4.3 (d) de la Ley 1-2012, *supra*, reitera que una autoridad nominadora no puede otorgar un contrato si un servidor público o la persona que comparte residencia con este último tiene algún interés pecuniario. Si aplicamos la normativa antes expuesta al caso de autos, es forzoso concluir que la relación consensual habida entre la Sra. Resto Mora y el Sr. Rivera Santiago al momento del otorgamiento del contrato provocaron la nulidad del contrato.

Por último, sobre el argumento que el apelante presentó en torno a la personalidad jurídica de Advance Technologies y el Municipio, no le asiste la razón. La relación entre la funcionaria del Municipio y el presidente de Advance Technologies, generó un interés pecuniario. Ni la Ley Núm. 81-1991, *supra*, ni la Ley Núm. 1-2012, *supra*, distinguen entre una persona jurídica o una persona natural para efectos de la aplicabilidad de sus estatutos o prohibiciones. Por lo cual, indistintamente sea una persona natural o una persona jurídica, si el funcionario público tiene un interés pecuniario o resulta beneficiado por el contrato, no puede surgir una relación contractual, salvo medie una autorización de la Oficina de Ética Gubernamental. En fin, los errores señalados en el escrito de apelación no se cometieron.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Sentencia* apelada.

**Notifíquese.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre con el resultado sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones