Miranda De Hostos, Juez Ponente
*1141 TEXTO COMPLETO DE LA SENTENCIA
La parte apelante, Trujillo Video, Inc., et ais. (Trujillo Video), nos solicita que revoquemos una sentencia del Tribunal de Primera Instancia, Sala Superior de Carolina, que declaró ha lugar la demanda de incumplimiento de contrato y daños y perjuicios, presentada por la parte apelada Luis Ortiz Fuentes, et ais.
Alega, en síntesis, que erró el tribunal de instancia, primero, al no declarar el contrato de arrendamiento entre las partes nulo, pues el mismo no estaba suscrito por todos los miembros de la sucesión; segundo, que aun cuando el contrato fuera válido, el mismo se extinguió por novación de la obligación; y tercero, al condenarlo al pago de la suma de $5,000.00 en concepto de honorarios de abogado, pues no actuó temerariamente.
Se confirma la sentencia apelada, por los siguientes fundamentos. Veamos.
I
El 11 de agosto de 1995, la parte apelante, Trujillo Video y Luis Ortiz Fuentes, con el consentimiento verbal de sus hijos, otorgaron un contrato de arrendamiento con opción a compra de un local comercial en Trujillo Alto. Las partes pactaron un canon de $650.00 mensuales por cinco (5) años y que la propiedad no podría ser subarrendada o vendida sip el consentimiento del arrendador. Además, pactaron una cláusula penal, que en caso de incumplimiento por parte del arrendatario Trujillo Video, el arrendador Ortiz Fuentes, tenía derecho a anular el contrato y a recibir el pago por los cánones adeudados. De ocurrir el incumplimiento, el arrendatario debía ser notificado por escrito dentro de los diez (10) días siguientes a tal evento. La parte apelante reconoce que el contrato de arrendamiento fue ratificado por los demás coherederos de Ortiz Fuentes. (T.E., págs. 22-27, 54-55, 70-72, 74, 138-144, 166.) (Ap. 12, págs. 41-44.)
Posteriormente, la parte apelante, Trujillo Video, inició gestiones para comprar el local, por lo que Ortiz Fuentes le entregó las escrituras y una tasación del local por $75,000.00 dólares. En diciembre de 1997, Trujillo Video, junto a Jorge De La Torre y el Ledo. Jesús Rivera Delgado, visitó a Ortiz Fuentes con el propósito de informarle que De La Torre tenía interés en comprar el local, pues él no podía, debido a que el banco no le había dado el financiamiento. El señor Ortiz Fuentes le informó a De La Torre que el precio era $75,000.00 dólares. Finalmente, acordaron venderle a De La Torre, pero quedaron en reunirse posteriormente con la parte apelante Trujillo Video y el abogado de De La Torre, para ponerse de acuerdo. (T.E., págs. 27-29, 56-58, 78, 87-89, 95-96, 103-104, 144-145, 148-150, 176, 188-193.)
Antes de dicha reunión, para el mes de diciembre de 1997, De La Torre le compró el local a la parte apelante, Trujillo Video, en $100,000.00, aún cuando éste no era su dueño. Como parte de dicha transacción, De La Torre le entregó a la parte apelante Trujillo Video, $25,000.00 y acordaron que el balance adeudado se entregaría cuando se terminaran todos los trámites. Posteriormente, Trujillo Video le devolvió los $25,000.00 a De La Torre, luego de que éste lo demandara, pero le descontó la renta desde enero hasta abril de 1998. Al *1142 momento de la compraventa entre la parte apelante Trujillo Video y De La Torre, este último tenía conocimiento de que el local era propiedad de Ortiz Fuentes y que la parte apelante se lo había alquilado con opción a compra. (T.E., págs. 76-77, 82-83, 85-87, 91-92, 94-97, 99, 103, 106-109, 146-148, 163-166, 172-179,184-185.)
Luego de tales eventos, hubo una reunión entre De La Torre y Ortiz y se acordó la compraventa por $100,000.00 dólares. Se pactó dicha cantidad, pues De La Torre había acordado esa cantidad con la parte apelante Trujillo Video y Ortiz Fuentes le exigió que le pagara lo mismo. En ese momento, no se firmó contrato alguno, pues Ortiz Fuentes tenía que resolver algunas gestiones de la herencia de su esposa para poder hacer la venta. (T.E., págs. 29-33, 59-62, 81-82, 90-91,104-105.)
Para enero de 1998 y aún bajo el contrato de arrendamiento original, De La Torre estableció en el local de Ortiz Fuentes la oficina de ajustes de Seguro Compulsorio de Automóviles y la parte apelante Trujillo Video, pagó la renta a Ortiz Fuentes hasta el mes de abril de 1998. El señor De La Torre pagó los meses de mayo y junio a la parte apelante, pero desconoce si éste le entregó el dinero a Ortiz Fuentes. (T.E., págs. 17-22, 34-36, 77-78, 80-81, 83-84, 89, 93-94, 100, 160, 194-197.)
No fue hasta abril de 1998, cuando Luis Ortiz Fuentes acude al local, que se percata que en el mismo ya no existía el negocio de vídeo, sino la oficina de ajustes de Seguro Compulsorio de Automóviles de Jorge De La Torre. Este le informó que la parte apelante Trujillo Video, le había arrendado el local con el compromiso de que se lo iba a vender. En ese momento, Ortiz Fuentes fue al local de la parte apelante Trujillo Video y le informó que había incumplido los términos del contrato de arrendamiento, pues había sub-arrendado y puesto en venta el local sin su consentimiento. (T.E., págs. 34-36, 73-74, 159-160, 179-188.)
La parte apelante, Trujillo Video, no pagó los cánones de arrendamiento desde mayo a julio de 1998. Sin embargo, Jorge De La Torre testificó que él sí le había hecho llegar dichos pagos a la parte apelante. El 16 de julio de 1998, la parte apelada y Jorge De La Torre otorgaron un contrato de compraventa sobre el local por el precio de $100,000.00 dólares. En el contrato, Ortiz.Fuentes compareció como viudo y en representación legal de sus hijos, que eran los herederos. (T.E., págs. 38-39, 41-42, 62-70, 75-76, 89-90, 97-99, 101-102.) (Ap. 13, págs. 45-47.)
El 13 de agosto de 1998, la parte apelada, Ortiz Fuentes, presentó demanda por incumplimiento de contrato y daños y perjuicios contra la parte apelante Trujillo Video. Alegando que ésta incumplió el contrato de arrendamiento al subarrendarle e intentar venderle el local arrendado a De La Torre, obteniendo de éste $25,000.00 para la compra del local. (Ap. 6, págs. 23-24.)
La parte apelante, Trujillo Video, contestó la demanda y alegó que se debía resolver el contrato entre las partes, pues era nulo al no haber sido otorgado por todos los componentes de la sucesión. Además, alegó que había ocurrido una novación extintiva por cambio en el deudor con el consentimiento del acreedor. (Ap. 7, págs. 25-29.)
El Tribunal de Primera Instancia declaró ha lugar la demanda condenando a la parte apelante, Trujillo Video, al pago de $1,950.00 por los cánones de arrendamientos que no fueron pagados y $15,600.00 por la cláusula penal pactada por las partes en el contrato de arrendamiento. Expresó el foro apelado que le dio entera credibilidad a la prueba testifical de la parte apelada, no así a la de la parte apelante Trujillo Video, dado sus inconsistencias y evasivas. (Ap. 1, págs. 1-6.)
Inconforme con la determinación del tribunal de instancia, la parte apelante, Trujillo Video, acude ante nos.
*1143 II
Expuestos los hechos pertinentes a la controversia ante nuestra consideración, procedemos a exponer la norma jurídica aplicable, según los errores alegados.
Como primer error, alega Trujillo Video que incidió el tribunal de instancia al no declarar nulo el contrato de arrendamiento, pues el mismo no estaba suscrito por todos los miembros de la sucesión.
No le asiste razón
A
Aspectos generales sobre los contratos
Nuestra norma jurídica establece que los contratos existen cuando concurren los requisitos de consentimiento, objeto y causa. Los contratos producen obligaciones que tienen fuerza de ley entre las partes contratantes. Arts. 1213 y 1044, Código Civil, 31 L.P.R.A. secs. 3391 y 2994; Master Concrete Corp. V. Fraya S.E., opinión de 30 de noviembre de 2000, 2000 J.T.S. 192, pág. 456. Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley. Art. 1210, Código Civil, 31 L.P.R.A. sec. 3375; Amador Parrilla v. Concilio Iglesia Universal, opinión de 23 de marzo de 2000, 2000 J.T.S. 60, pág. 877.
Las partes contratantes pueden pactar las cláusulas y condiciones que le sean convenientes, siempre y cuando las mismas no sean contrarias a las leyes, a la moral, ni al orden público. Art. 1207, Código Civil, 31 L.P.R.A. sec. 3372.
En cuanto a la interpretación de los contratos, si los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Art. 1233, Código Civil, 31 L.P.R.A. sec. 3471; Mattei v. Vélez, opinión de 7 de mayo de 1998, 98 J.T.S. 55, pág. 921.
B
Los contratos anulables
Nuestro ordenamiento jurídico establece que cuando un contrato no contiene los requisitos de consentimiento, objeto o causa, el mismo puede ser anulado. Art. 1252, Código Civil, 31 L.P.R.A. sec. 3511; Besosa Quiñones v. Corporación Azucarera, 137 D.P.R. 939, 943-944 (1995). La anulabilidad del contrato es una medida protectora para aquel contrato que contiene un vicio del consentimiento o en el que uno de los contratantes está incapacitado para contratar. L. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, 7ma ed., Madrid, Tecnos, 1995, Vol. II, pág. 116; E. Vázquez Bote, Tratado, Teórico, Práctico y Crítico de Derecho Privado Puertorriqueño, San Juan, Butterworth, 1992, Tomo IV, págs. 352-353.
El contrato anulable es en un principio eficaz; sin embargo, desde su comienzo existe una causa que puede anularlo. La eficacia del contrato anulable es latente, pues la misma puede desaparecer en cualquier momento si dentro del plazo de cuatro (4) años se ejerce la acción de nulidad correspondiente o se ratifica por quien puede llevar la acción de nulidad. Art. 1253, Código Civil, 31 L.P.R.A. sec. 3512; Pérez Mercado v. Martínez Rondón, 130 D.P.R. 134, 150 (1992); J. Puig Brutau, Fundamentos de Derecho Civil, 3ra ed., Barcelona, Bosch, 1988, Tomo II, Vol. I, pág. 304.
El contrato meramente anulable, conserva su validez mientras no se ejercite la acción de nulidad correspondiente. Una vez transcurre el plazo para impugnar el contrato, éste se consolida en toda su eficacia. Asimismo, el contrato puede ser ratificado adquiriendo una validez definitiva, pues la validez y eficacia que tenía, queda así consolidada. Pérez Mercado v. Martínez Rondón, supra; E. Vázquez Bote, Tratado, Teórico, Práctico y *1144 Crítico de Derecho Privado Puertorriqueño, supra, pág. 353; J. Puig Brutau, Fundamentos de Derecho Civil, supra.
El artículo 1254 del Código Civil, dispone que:

“Pueden ejercitar la acción de nulidad de los contratos, los obligados principal o subsidiariamente en virtud de ellos. Las personas capaces no podrán, sin embargo, alegar la incapacidad de aquéllos con quienes contrataron; ni los que causaron la intimidación o violencia, o emplearon el dolo o produjeron el error, podrán fundar su acción en estos vicios del contrato. ”

31 L.P.R.A. see. 3513.
El ejercicio de la acción de nulidad corresponde al titular de interés a quien el ordenamiento jurídico persigue proteger. Pérez Mercado v. Martínez Rondón, supra, págs. 150-151; Trabal Morales v. Ruiz Rodríguez, 125 D.P.R. 340, 348-349 (1990); J. Puig Brutau, Fundamentos de Derecho Civil, supra, pág. 306. Sólo pueden impugnar el contrato, los legitimados para ello. E. Vázquez Bote, supra, pág. 355.
El Artículo 1254, supra, establece que los capaces no pueden impugnar la validez de los contratos alegando la incapacidad del otro contratante. En estos casos, el ordenamiento jurídico le brinda protección al incapaz o a aquellos cuya capacidad necesita ser complementada. Cuando existe una comunidad hereditaria, los herederos están impedidos de otorgar contratos sin el consentimiento de todos los herederos en el caso de enajenaciones, y de la mayoría, en caso de actos de administración. En tal caso, las personas indebidamente representadas, los coherederos, son los que tienen legitimación para impugnar el contrato. Quiñones v. Quiñones, 91 D.P.R. 225, 281 (1964); J. Puig Brutau, Compendio de Derecho Civil, 3ra ed., Barcelona, Bosch, 1997, Vol. II, pág. 255.
C
La comunidad hereditaria y el arrendamiento
Los herederos llamados simultáneamente, pasan a sustituir al causante en la titularidad de todos sus derechos y obligaciones hasta que se realice la partición de la herencia. Esta situación que existe hasta tanto se lleve a cabo la partición, se conoce como la comunidad hereditaria, donde ninguno de los herederos tiene un derecho concreto sobre la herencia, sino que poseen una participación global en abstracto sobre la herencia. Cintrón v. Cintrón, 120 D.P.R. 39, 48 (1987); J. R. Vélez Torres, Curso de Derecho Civil, 3ra ed., San Juan, Centro Gráfico del Caribe, Inc., 1997, Tomo IV, Vol. III, págs. 481-482.
Cada heredero tiene plena disposición de su porción hereditaria y por lo tanto puede enajenarla, cederla o hipotecarla. Por otro lado, para disponer de los bienes específicos que componen el caudal hereditario que los herederos poseen en comunidad, es necesario el consentimiento unánime de todos los herederos. Kogan v. Registrador, 125 D.P.R. 636 (1950); L. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, supra, pág. 572; J. Puig Brutau, Fundamentos de Derecho Civil, supra, pág. 349.
Para los actos de administración sobre los bienes que componen el caudal hereditario, se necesita el consentimiento de la mayoría de los herederos, que componen la comunidad hereditaria. La falta del consentimiento unánime de los herederos no impide que prevalezca la mayoría para realizar actos de administración sobre los bienes que componen la comunidad hereditaria. Art. 332, Código Civil, 31 L.P.R.A. sec. 1277; J. Puig Brutau, Fundamentos de Derecho Civil, supra, pág. 350; L. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, supra, pág. 573.
El arrendamiento de un inmueble por menos de seis (6) años es un acto de administración. En este caso, sólo es necesario el acuerdo de la mayoría de los comuneros para que el mismo sea válido. No obstante, si el *1145 arrendamiento es por seis (6) años o más, o cuando fuera menos de seis (6) años, pero las partes pactaran su inscripción en el Registro de la Propiedad, se considera como un acto de disposición, para el cual se necesita el consentimiento unánime de los comuneros. Gual v. Pérez, 72 D.P.R. 609, 615 (1951).
D
Aplicación del derecho a los hechos
El contrato de arrendamiento entre Trujillo Video y Ortiz Fuentes, fue estipulado por un término de cinco (5) años y del expediente no surge que se haya pactado la inscripción del mismo en el Registro de la Propiedad. El contrato de arrendamiento suscrito fue un acto de administración que requería el consentimiento de la mayoría de los coherederos y no unánime como alega la parte apelante Trujillo Video. Además, dicho contrato fue ratificado por los demás coherederos, según lo acepta, inclusive, la parte apelante en su alegato.
Las personas con legitimación activa para levantar la nulidad del contrato suscrito entre la parte apelante y Ortiz Fuentes, eran los coherederos de este último. La capacidad de Ortiz Fuentes para otorgar el contrato de arrendamiento por cinco (5) años estaba limitada a la necesidad del consentimiento de la mayoría de sus coherederos, y éstos dieron su autorización verbal para ello. Estos últimos, eran los que poseían legitimación para impugnar el contrato de arrendamiento entre las partes, pues es a ellos a quienes se les afectaría su derecho.
Por lo tanto, la parte apelante no tenía legitimación para impugnar la validez del contrato de arrendamiento otorgado entre las partes, por la falta de consentimiento de los coherederos de Ortiz Fuentes, pues los que tenían legitimación para impugnarlo eran los coherederos y no lo hicieron, además ellos ratificaron el mismo.
III
Como segundo error, alega la parte apelante que aun cuando el contrato fuera válido, el mismo se extinguió por novación de la obligación.
No le asiste razón.
A
Novación extintiva de las obligaciones por sustitución de la persona del deudor
Las obligaciones pueden modificarse variando su objeto o condiciones principales, sustituyendo la persona del deudor, o subrogando a un tercero en los derechos del acreedor. Art. 1157, Código Civil, 31 L.P.R.A. sec. 3241.
El Artículo 1159 del Código Civil, establece lo siguiente:

“La novación, que consiste en sustituirse un nuevo deudor en lugar del primitivo, puede hacerse sin conocimiento de éste, pero no sin el consentimiento del acreedor. ”

31 L.P.R.A. 3243.
Sobre el particular, nuestro más alto foro ha expresado lo siguiente:
[...Jeste consentimiento tiene que constar en forma patente y manifiesta. [...] No puede ser objeto de suposiciones ni de presunciones, puesto que su efecto jurídico es radical, extingue la deuda y desliga al deudor primitivo de toda obligación con el acreedor y crea un nuevo vínculo obligacional con el deudor sustituto. Más *1146 aún, la extinción de la deuda lleva consigo la extinción de las garantías y demás derechos accesorios, [...]. [...], una consecuencia drástica como esta sólo podía producirse cuando las partes tenían una clara conciencia de ello. ” (Citas omitidas.)
Teachers Annuity v. Soc. de Gananciales, 115 D.P.R. 277, 282 (1984).
B
Aplicación del derecho a los hechos
Según expresáramos anteriormente, para que ocurra la novación por cambio en la persona del deudor, tiene que existir el consentimiento en forma patente y manifiesta del acreedor. En el caso de autos, no existió ni el consentimiento ni la intención del acreedor Ortiz Fuentes de sustituir como deudor a la parte apelante Trujillo Video por De La Torre.
Además, Trujillo Video continuó pagando la renta, representando ser el arrendatario, aun cuando había sub-arrendado el local a De La Torre sin el consentimiento de Ortiz Fuentes. El apelado Ortiz Fuentes se percata que Trujillo Video no estaba en el local y que lo habían sub-arrendado, cuando va de visita, pues éste no se lo había informado.
Concluimos que el Tribunal de Primera Instancia actuó correctamente al determinar que no ocurrió una novación extintiva de la obligación por cambio de la persona del deudor.
IV
Como tercer error, alega la parte apelante que erró el tribunal de instancia al condenarla al pago exágerado de la suma de $5,000.00 por concepto de honorarios de abogado, pues no actuó de forma temeraria.
No le asiste razón.
A
Honorarios de abogado
Cualquier parte que proceda con temeridad deberá pagar una suma que fije el tribunal en concepto de honorarios de abogado. Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Se ha definido la temeridad, como aquella conducta que permite que se celebre o se prolongue un litigio innecesariamente o que obliga a otra parte a litigar, por su contumacia u obstinación. Blás Toledo v. Hosp. Ntra. Sra. de la Guadalupe, opinión de 30 de junio de 1998, 98 J.T.S. 101, pág. 1473.
Los honorarios de abogados que se conceden por temeridad, dependen de la discreción del tribunal sentenciador, por lo que un tribunal apelativo no debe modificarlo ante la ausencia de abuso del ejercicio de la discreción judicial. Ramos Báez v. Bossolo López, 143 D.P.R. 567, 572 (1997).
B
Aplicación del derecho a los hechos
En el caso de autos, no encontramos que el tribunal de instancia haya abusado de su discreción al condenar a la parte apelante al pago de honorarios de abogado por temeridad.
Del análisis del expediente y la transcripción de la vista, surge que Trujillo Video actuó de forma temeraria al *1147 incumplir con el contrato y obligar a la parte.apelada, Ortiz Fuentes, a incurrir en gastos de litigio para reclamar sus derechos.
Concluimos que el tribunal de instancia no abusó de su discreción al determinar que la parte apelante fue temeraria, y la cantidad de $5,000.00 no constituye una suma exagerada, para un litigio que inclusive se tardó más de dos (2) años en resolverse.
y
Por los anteriores fundamentos, se confirma la sentencia apelada, según sus términos y condiciones.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General